SAMUEL W. OAKEY, PLAINTIFF IN ERROR, *v.* JOHN H. BENNETT, ADMINISTRATOR OF WILLIAM HALL, AND JOHN H. ILLIES.

A decree in bankruptcy passed, in 1843, by the District Court of the United States for the Eastern District of Louisiana, did not pass to the assignee the title to a house and lot in the city of Galveston and State of Texas, which house and lot were the property of the bankrupt.

Texas was then a foreign state, and whatever difference of opinion there may be with respect to the extra-territorial operation of a bankrupt law upon personal property, there is none as to its operation upon real estate. This court concurs with Sir William Grant, in 14 Vesey, 537, that the validity of every disposition of real estate must depend upon the law of the country in which that estate is situated.

Besides, the deed made by the assignee in bankruptcy to one of the parties in the present cause was not made conformably with the laws of Texas; and letters of administration upon the estate of the bankrupt had been taken out in Texas before the fact of the bankruptcy was known there; and the creditors of the estate in Texas had a better lien upon the property than the assignee in Louisiana.

THIS cause was brought up, by writ of error, from the District Court of the United States for the District of Texas.

It was an ejectment, conducted by way of petition and answer, for a house and lot in the county and city of Galveston, in the State of Texas, being lot No. 13 in block No. 681.

The suit was brought by Oakey against Bennett, the admin-

istrator of William Hall, and John H. Illies, tenant in possession. In the bill of exceptions the suit is denominated an action of "trespass to try titles"; but as the petition prayed for the restoration of the property, as well as damages, it seems more proper to call it an ejectment.

Upon the trial, the plaintiff sought to derive his title from Hall, under whom the defendants claimed also.

In 1842, Hall was in possession of the lot by purchase from John S. Snydor, but no deed was at that time made.

On the 9th of February, 1843, Hall (calling himself William Hall, late of Galveston, Texas) filed a petition in the District Court of the United States for the Eastern District of Louisiana, praying for the benefit of the bankrupt act of the United States, passed August 19th, 1841. The legal notice was given, and on the 10th of March, 1843, he was declared a bankrupt, and F. B. Conrad, of New Orleans, appointed assignee.

On the 3d of April, 1843, Snydor executed a deed to Hall of the house and lot in Galveston.

In March, 1844, Hall died, and Bennett, the defendant, was appointed administrator by the Probate Court of Galveston County in Texas.

In May, 1845, Conrad, the assignee of Hall, petitioned the District Court for an order to sell the effects of the bankrupt, and, the usual preliminary proceedings being had, a public sale took place for cash. An article in the inventory was "all the right, title, and interest of the bankrupt in and to a house and lot in Galveston, Texas." Samuel W. Oakey became the purchaser of this for the price of four hundred dollars, and on the 18th of June, 1845, Conrad executed to Oakey a deed which conained the following recital, viz. : —

"And the said William Hall, bankrupt, at the time he filed his petition in said court to be declared a bankrupt, and at the time, said 10th March, 1843, when he was declared and decreed a bankrupt, was possessed of a claim to a house and lots in the city of Galveston, of the exact nature of which the said Francis B. Conrad, assignee as aforesaid, could not obtain any exact knowledge or description ; which claim, whether it was one or in plurality, on a house or houses, building or buildings, more or less in number, of lots, parcel, or parcels of land, be they what they were, situated in the city of Galveston, republic of Texas, by said act of Congress, and the decrees of said court on said bankrupt's petition, with all his property and rights of property, of every name and nature, and whether real, personal, or mixed, became, by the mere operation of said act thus made and provided, *ipso facto* from the time of such decree aforesaid, and was deemed to be, divested out of such bank-

rupt, without any other act, assignment, or conveyance whatsoever, and the same became vested by force of the same in Francis B. Conrad, assignee as aforesaid. All of which rights of property or real estate, whatever might be the nature of his title thereto, or interest therein, which was situated in the city of Galveston, republic of Texas, it was my intention to sell, as assignee as aforesaid, at public auction ; and the said court, on considering my petition to that effect, made judgment thereon, and issued an order of sale under date of 23d May, 1845 ; and by virtue of said order of sale by said court, and after due and lawful advertisement made by William F. Wagner, United States marshal for the district, and at the time and place designated in said advertisement, at the hour of 12, noon, on this 18th day of June, A. D. 1845, the said marshal did, under my direction, then and there publicly cry, adjudicate, and sell to Samuel W. Oakey, the last and highest bidder, as follows, viz.: ' all the right, title, and interest of the said bankrupt (William Hall) in and to a house and lots in the city of Galveston, Texas, being lot 13, block 681, or lot 9, block 622, or both,' and sold without any guaranty whatever. The said Samuel W. Oakey became the purchaser for the price and sum of four hundred dollars, the receipt of which is hereby, as it already has been, acknowledged. In consideration thereof, I, the said Francis B. Conrad, assignee as aforesaid, have bargained, sold, conveyed, assigned, transferred, set over," &c., &c.

This deed was afterwards recorded in Texas.

On the 12th of December, 1846, Bennett settled an account with the Probate Court, showing that he was in advance for the estate $ 1,811.03.

On the 25th of January, 1847, Oakey filed a petition in the District Court of the United States for the District of Texas, which, after having been the subject of sundry pleas and demurrers and motions, was finally withdrawn, and an amended petition filed on the 31st of May, 1848. This was the subject of some motions too, but at length issue was joined, on the 5th of June, 1848, and the cause came on for trial. Being left to a jury, they found a verdict for the defendants.

The bill of exceptions sets forth all the deeds offered in evidence by the plaintiff, for the purpose of showing a title in Hall, and also the record of the proceedings in bankruptcy, to show that this title passed to himself. This part of the bill is not necessary to an understanding of the prayers addressed to the court, and it is therefore omitted. Nor is it necessary to insert the evidence, as offered by the defendant, to prove interlineations and falsifications of the record. The following are the prayers addressed to the court on the part of the plaintiff.

" The plaintiff requests the court to charge the jury,—

" 1st. That if the jury find, from the evidence, that at the date of Hall's bankruptcy he was seized and possessed of the premises in question, and that, being so possessed, he, Hall, voluntarily applied to the honorable United States District Court of Louisiana to be declared a bankrupt, and was, in accordance with the act of Congress of the 19th of August, 1841, adjudged and decreed by the court to be a bankrupt, such voluntary petition and decree operated to divest and pass Hall's estate in the premises, and vested the property as absolutely in Hall's assignee as he, Hall, might have done by his own voluntary conveyance.

" (Which instruction the court gave.)

" 2d. That if the said assignee, Conrad, so appointed by said court, in execution of the order of said court sold said property to plaintiff for a valuable consideration, such bankruptcy, decree, order, sale, and purchase passed the right of property as effectually to plaintiff as Hall might have done by his voluntary deed of conveyance.

" (Which second instruction the court refused to give.)

" 3d. That if Hall did petition, and at the time of his petition in bankruptcy surrendered the premises in question as part of his assets, although he only had possession thereof under a purchase by inchoate title, which was afterwards perfected by full grant, such subsequently acquired title enured to the benefit of plaintiff.

" (Which third instruction the court refused.)

" 4th. That if the jury find from the evidence that Hall applied to the proper court, by his own voluntary petition, for the benefit of the act of Congress of the United States of the 19th of August, 1841, and obtained a decree of bankruptcy on said voluntary application, then all the property of said Hall, of every kind and nature whatever, real, personal, or mixed, was thereby divested out of said Hall, and vested as fully and effectually in his proper assignee, duly appointed, as the same was previously vested in Hall.

" (Which instruction the court gave.)

" 5th. That the act of the United States Congress of the 19th of August, 1841, was recognized and adopted by the laws of Texas as part of the law of the republic of Texas.

" (And this fifth instruction the court refused to give, saying, that the law of the republic of Texas referred to recognized the bankrupt's discharge, but did not affect his real estate, and here directs the clerk to insert the law referred to, which is an act of the republic of Texas, approved February, 1841, laws of that year, p. 143, entitled "An Act for the relief of

those who have taken the benefit of the insolvent laws·of other countries."

" 6th. That if Hall made a voluntary assignment in Louisiana of the premises in question, in order to obtain the benefit of the said act of the 19th of August, 1841, such assignment was, and is, in point of law, equivalent to a voluntary conveyance made by Hall of said premises to the plaintiff.

" (Which instruction the court refused.)

"7th. That the transcript of the record, marked A, from the United States District Court of Louisiana, is competent and conclusive evidence of what it purports to contain, and what is recited therein; and that under law said transcript of record is entitled to full faith and credit.

" 8th. That Bennett is in no better condition in relation to the property in controversy than Hall himself would have been had he been living and the defendant in this suit.

" (This charge, the eighth, the court gave.)

" As to the seventh instruction asked, the court charged the jury that full faith and credit should be given to the transcript of the record of the court in Louisiana; that is, that it is entitled to the same force and efficacy here that it would be entitled to in the court where the transaction was had, and of which it purports to be the record; that in this court, as in that, parol testimony is competent to show that that which claims to be a record is void for forgery.

" 9th. That if the jury believe from the evidence, that after Hall's act of bankruptcy he became a citizen of Texas, Oakey being and remaining a citizen of the United States until the annexation of Texas to the United States, then, by the act of annexation, the property in question became as absolutely Oakey's as though Texas had been one of the United States at the date of the bankruptcy, the act of annexation having, by relation, removed every disability growing out of the laws of the place where the land is situated, and of Oakey's personal right to hold.

" (Ninth refused by the court.)

" 10th. That if the jury believe from the pleadings and evidence that Oakey has derived his title from or through Hall's voluntary act, either of record or by conveyance, and that the defendant Bennett only claims as Hall's administrator, and Illies as his tenant, then Bennett is only the personal representative of Hall, and, as such, a proxy, and as fully and effectually estopped from denying Oakey's title as Hall himself would have been, and that Hall would have been absolutely estopped.

" (Refused by the court.)

" 11th. That, if the jury find for the plaintiff, they may find the rents as damages.

" ( Which the court gave.)

" 12th. That the act for the relief of persons who have taken the benefit of foreign insolvent laws of Texas, passed February, 1841, (before referred to,) recognizes a surrender under a foreign bankrupt law, if honestly made, as a valid and legal mode of transferring the bankrupt's real estate lying in Texas.

" ( Which the court refused.)

" 12th. That Oakey is vested with all the rights that were vested in Conrad by virtue of his due appointment as assignee of Hall.

" ( And this twelfth instruction the court refused to give.)

" And to the failure and refusal of the court to give the instructions hereinbefore asked, and by the court refused as noted, and to the giving the said several instructions not asked, which by the court were given as hereinbefore set forth, the said plaintiff at the time excepted.

" And now, for the purpose of saving the said several exceptions taken, as well as to set forth the whole facts of the case, the court seals this bill of exceptions, and orders the same to be filed and made a part of the record, which is done 5th June, 1848.          JOHN C. WATROUS, [L. S.]
                          *U. S. Judge.*"

The case came up to this court upon all these points.

It was argued by *Mr. Hall,* for the plaintiff in error, and *Mr. Rogers* and *Mr. Howard,* for the defendants in error, with whom were *Mr. Ovid F. Johnson* and *Mr. Harris.*

The points made in the arguments of counsel which are not touched upon in the opinion of the court are omitted in this report.

*Mr. Hall,* for plaintiff in error.

Third Point. There was error in the court below in refusing to charge that the plaintiff became vested with the rights of property, which had been vested in Conrad by Hall's bankruptcy. (Charge asked for in Nos. 2 and 12.)

1. The court had charged, that the decree which discharged Hall divested him of his property, and vested it in Conrad. And therein it was correct. General Bankrupt Law, § 3.

2. That the vested property in Conrad, when deeded to the plaintiff, passed Hall's rights, is a *sequitur* of the charge given. The assignee had power to deed. General Bankrupt Law, § 15.

3. The surrender and conveyance in Louisiana passed the

property in Texas.   This while she was yet a republic.   Proviso in Act, 5 Texas Laws, p. 44 ; Dallam's Digest, pp. 94, 95 ; Carr's Guardian v. Wellborn, Dallam's Digest, p. 624, and 1 Texas Reports, 463.*

4. This was not a *compulsory,* but a *voluntary* transfer.   A bankrupt's property out of the jurisdiction of the tribunal passing it *may* not be transferred as against creditors of the *locus rei sitæ,* when *compulsory* or scheduled in general terms ; but if he voluntarily surrenders it, it passes.   Selkrig v. Davies, 2 Rose, B. C. 291 ; Story, Conflict of Laws, § 38 ; Bank of Augusta v. Earle, 13 Pet. 519 ; 16 Pet. 57.

. Fourth Point.   Had Hall been defendant in this suit, he would have been estopped from resisting plaintiff; and there was error in the refusing so to charge by the court.   He had voluntarily surrendered property.   It had vested in an assignee. That assignee had deeded it to plaintiff.   Hall and the plaintiff were privies in the successive relationship of the latter to the former as to the same rights of property.   1 Greenleaf on Evidence, § 189.

The effect of Hall's surrender was to vest his property in his assignee, and in whomever the assignee might sell to.   He is presumed to have known this, for it was the effect of his own deed.   Even if in law his surrender in Louisiana did not pass Texas property, *he* could not set it up.   Nullus commodum capere potest de injuriâ suâ propriâ.   And surely either Hall or his privy in representation cannot now deny the title of plaintiff, who, a *bonâ fide* purchaser, by reason of their own act, will else be prejudiced by their taking advantage of Hall's wrong (assuming that any existed).

Fifth Point.   If Hall was thus estopped, Bennett, the defendant, was also estopped.   (Error in charging to contrary.) That he was in the same condition in which Hall, if defendant, would have been, was charged by the court.   And this was so. Bennett was Hall's administrator, and his privy in representation.   1 Greenleaf on Evidence, § 189.   The admissions of an intestate bind his administrator.   Smith v. Smith, 3 Bing. N. C. 29 ; Ivat v. Finch, 1 Taunt. 141.

The record of bankruptcy was in evidence, which would have bound Hall, and also Bennett, his administrator.   1 Greenleaf on Evidence, §§ 522, 523.   There was no evidence to show that Bennett was holding for creditors.   He was Hall's administrator in a personal capacity only.

---

* Texas had recognized and applied the force of the common law of England, as her rule of jurisprudence, whenever not in conflict with her own laws.   By the common law of England the title of foreign assignees was recognized.   Sill v. Worswick, 1 Hen. Bl. 691.

Sixth Point. The title to the property in controversy (lot 13, block No. 681, city of Galveston) was in Hall when he was decreed bankrupt, — the time at which his property vested in the assignee. General Bankrupt Law, § 3.

Hall bought from Snydor, in the autumn of 1842, by parol agreement; went into occupation, and made improvements. Snydor testifies, that he considered Hall owner all this time; " he would have made the deed at any time after the bargain and sale." The deed was made April 3d, 1843; discharge by decree, June 16th, 1843.

" In the case of a parol contract for the sale of lands, if after-wards carried into effect by a conveyance, the deed will relate back to the date of the contract," &c. 4 Kent's Com. 451, note, last edition; Clary *v.* Marshall, 5 B. Monroe, 266.

By the Texas statute of frauds, estate for less than five years could be made by parol. Dallam's Digest, 61.

There was part-performance of the parol sale; —

1. By occupation. Wilber *v.* Paine, 1 Ham. Ohio, 251; Gregory *v.* Mitchell, 1 Hoff. 470.

2. By improvements. Parkhurst *v.* Van Cortlandt, 1 Johns. Ch. 274.

Part-performance of parol contract for lands saves the statute of frauds. 4 Kent's Com. 451.

There was error in the face of these matters of fact and law, in refusing to charge as asked for. (Charge 3.)

Seventh Point. If Hall had possessed any creditors in Texas at the time he surrendered his Texas property, (which does not appear so to be,) and who were thereby prejudiced, Hall could have pleaded his discharge in Louisiana against their demands.

This by statute of Texas. It would be a legal mockery, in construing this statute, to say that, while it recognized the validity of a foreign discharge, it did not recognize the *effect* of that discharge. There was error in charging the latter. (Charge 12.)

Eighth Point. As against every person but the State, the assignee, although not a citizen of Texas, as well as plaintiff, could succeed to Hall's rights, and hold land.

Aliens may take by purchase, and hold land, until office found. Fairfax *v.* Hunter, 7 Cranch, 603.

This is so well established, said a distinguished justice of this court, that the reason is only a search for the antiquary.

And until land is seized by the State, aliens may convey or maintain action. 13 Wend. 546.

Naturalization relates back, and confirms title to land purchased during alienage. Jackson *v.* Beach, 1 Johns. Cas. 399.

Texas, as a republic, having slept on her rights to escheat the land vested by Hall in his assignee, (conceding, *argumenti gratiâ*, such right to have existed,) when admitted as a State, the disability of the assignee was removed; and the annexation operated to confirm his title in the same manner as naturalization. There was error in refusing so to charge, as at charge 9.

The points made by the counsel for the defendant were the following: —

1. This is an action of trespass to try title under the statutory regulation of Texas, which declares that the trial shall be regulated by the principles of ejectment. Hartley's Digest of Texas Laws, p. 969. It requires a legal title to sustain the action in this court.

2. The transfer of land by a foreign bankruptcy is not such a title. Whatever may be doubtful as to the effect of a foreign assignment in bankruptcy upon personal estate, it is universally admitted that it cannot convey real property, which is regulated by the law of the *situs.* Story, Conflict of Laws, §§ 422 *a*, 428, 591.

3. The record shows that Oakey was a citizen of Louisiana at the date of the sale to him. He was therefore an alien, and the tenth section of the general provisions of the constitution of the republic forbids aliens to hold land except by titles emanating from the government. Hartley's Dig. 38; Story, Confl. § 429. At common law a party may take by purchase, and hold until office found; but he cannot take by operation of law, or by descent, or by bankruptcy. As he cannot hold, the law will not cast the title upon him.

4. The act of the Texas Congress does not recognize conveyances by foreign bankrupt assignments. It is confined to the effect of the *discharge.* The discharge is one thing, the assignment another, and they are quite different in their effects. The Texas bankrupt law required a regular deed of assignment from the debtor. Hartley's Dig. 114, 115.

5. The bankrupt law of the United States of 1841 does not provide for an assignment. It requires the applicant to present a petition, with a list of his creditors and their places of residence, together with a schedule of his property, &c., and when declared a bankrupt, the third section provides that title to all his property, real and personal, shall be vested in assignees "by operation of law," without any other assignment or transfer. Such an act can have no extra-territorial force on real property, for the obvious reason, that there would be a defect of jurisdiction. The authority of the court could not extend to lands beyond the United States.

4 *

The title to lands must be passed according to the law of the *situs.* The pretended transfer of the assignee, Conrad, could not pass title to lands in Texas, because it was not a deed at common law, nor according to the provisions of the laws of Texas. It had neither a seal, nor the scroll recognized by the statutes of Texas. It had no subscribing witness, nor was it acknowledged before any judge or other officer, as required by the statutes of Texas. If the judgment of the court of bankruptcy could have had any extra-territorial force or authority to transfer real estate, the instrument of the commissioner Conrad cannot operate as a deed to pass the fee. Hartley's Dig. 128. Under any aspect of the case, it could not support ejectment. More especially when it was shown that there were Texas creditors at the time Hall was declared a bankrupt.

6. The registered copy of the conveyances was not competent evidence, because not legally admitted to record. The originals were not acknowledged and proved, as required by the Texas registry act, and were not, therefore, evidence under her judiciary act. Hartley, 839; Ib. 255.

7. The description in the transfer of the commissioner, of a " house and lot in Galveston," was not sufficient without the interlineation of the number and block, which was proved by the marshal to have been made after the sale, and in the handwriting of the vendee. This of itself was sufficient to avoid the deed unless explained, and the *onus* of the explanation was on the vendee.

The following authorities were cited in addition, to show that title to land in Texas did not pass to the assignee of a bankrupt under the laws of a foreign country :— Kirby, 313; 1 Har. & McHenry, 236; 2 Ib. 463; 2 Hayw. 24; 4 McCord, 519; 1 Rep. Con. Ct. 283; 6 Binney, 353; 6 Pick. 286; Bee, 244; 5 Cranch, 302; 12 Wheaton, 361; 3 Wendell, 538; 2 Kent's Com., 1st edition, 330; 20 Johnson, 254; 4 Wheaton, 213; 2 Story, 360 and 630; 1 Metcalf and Perkins's Dig. 400, pl. 123, 124; 1 U. States Dig. (Supplement), 270, pl. 93, 94.

Mr. Justice McLEAN delivered the opinion of the court.

A writ of error to the District Court of the United States for Texas brings this case before us.

Under the forms of procedure in Texas, an action was commenced by petition, on the 25th of January, 1847, by the plaintiff, for the recovery of a house and lot in the city of Galveston, Texas, described in the plan of said city, number thirteen, in block six hundred and eighty-one. The plaintiff gave in

evidence a deed from the proprietors of the city for the lot in controversy to James S. Holman, dated 1st June, 1840. The same lot, on the 3d of April, 1843, was conveyed to William Hall, by Snydor, the attorney of Holman. The purchase was made by Hall, some time before the deed was executed, and he entered into the possession of the lot, made improvements thereon, and continued to occupy it until his death. The defendant Illies has been in possession of the lot since the death of Hall.

On the 9th of February, 1843, William Hall ("late of Galveston, Texas") filed his petition for the benefit of the bankrupt law, in the District Court of the United States for the Eastern District of Louisiana, and on the 10th of March following he was declared a bankrupt. A schedule of his assets was filed, among which was the lot now in controversy. Francis B. Conrad, of the city of New Orleans, was appointed his assignee, who gave bond as required. The assignee, on application to the District Court, obtained an order for the sale of the house and lot, and they were sold, in pursuance of such order, to Oakey, the plaintiff, on the 18th of June, 1845, to whom a deed was executed on the same day by the assignee.

Before the commencement of the suit, in 1844, Hall died, and Bennett, the defendant, was appointed his administrator in Texas. Process was issued against him, and also against Illies, the person in possession, who refused to recognize the right of the plaintiff.

In his answer Bennett avers, that the petition and the matters and things therein set forth are not sufficient in law, &c., and he prays judgment, &c. And for further answer he states, that Hall departed this life before the annexation of Texas to the United States, and that administration of his estate was duly granted to the defendant. That he proceeded in the discharge of his duties, and he exhibits accounts against the estate of Hall, by himself and other citizens of Texas, which were allowed by the Probate Court, amounting to the sum of $1,811, before any conveyance of the house and lot by the assignee of Hall was set up or registered in Galveston County, as the law required. And he avers that there is no property to satisfy the debts of the estate, except the house and lot in controversy.

Many points were raised, on which bills of exception were taken to the rulings of the court, in the progress of the trial, but the validity of the deed of the assignee to the plaintiff is the great question in the case.

There can be no doubt, the proceedings in bankruptcy being regular and *bonâ fide*, that the property of the bankrupt, within

the appropriate jurisdiction, became vested by the act of Congress in his assignee. At the time of the decree of bankruptcy, and until a short time before the sale and conveyance of the property in question to the plaintiff, Texas was an independent republic, and in every respect a foreign state to the government of the United States.

In this country there is some diversity of opinion among the State courts, whether a bankrupt law, in regard to personal property, has an extra-territorial operation. That it has such operation is a doctrine which seems to be well settled in England by numerous decisions, and particularly in the Royal Bank of Scotland *v.* Cuthbert, (1 Rose's Bankrupt Cases, Appendix, 462, and 2 Rose's Cases, 291,) in which Lord Eldon said : " One thing is quite clear, that there is not in any book any dictum or authority that would authorize me to deny, at least in this place, that an English commission passes, as with respect to the bankrupt and his creditors in England, the personal property he has in Scotland or in any foreign country."

It is held in England, that an assignment of personal property under the bankrupt law of a foreign country passes all such property and debts owing in England ; that an attachment of such property by an English creditor, with or without notice, after such an assignment, is invalid. And the doctrine is there established, that an assignment under the English bankrupt law transfers the personal effects of the bankrupt in foreign countries. But an attachment by a foreign creditor, not subject to British laws, under the local laws of a foreign country, is held valid. The principle on which this doctrine rests is, that the personal estate is held as situate in that country where the bankrupt has his domicile.

A statutable conveyance of property cannot strictly operate beyond the local jurisdiction. Any effect which may be given to it beyond this does not depend upon international law, but the principle of comity ; and national comity does not require any government to give effect to such assignment, when it shall impair the remedies or lessen the securities of its own citizens. And this is the prevailing doctrine in this country. A proceeding *in rem* against the property of a foreign bankrupt, under our local laws, may be maintained by creditors, notwithstanding the foreign assignment.

But it is an admitted principle in all countries where the common law prevails, whatever views may be entertained in regard to personal property, that real estate can be conveyed only under the territorial law. The rule is laid down clearly and concisely by Sir William Grant, in Curtis *v.* Hutton, 14

Ves. 537, 541, where he says, " The validity of every disposition of real estate must depend upon the law of the country in which that estate is situated." The same rule prevails generally in the civil law. Boullenois, John Voet, Christinæus, and others, (cited in Story, Conflict of Laws, 359, 360,) say, " As a general rule, movable property is governed by the law of the domicile, and real property by the law of the *situs rei.*"

This doctrine has been uniformly recognized by the courts of the United States, and by the courts of the respective States. The form of conveyance adopted by each State for the transfer of real property must be observed. This is a regulation which belongs to the local sovereignty.

It is argued that the entire interest in the property in dispute passed, under the bankruptcy, to the assignee of Hall; and that, it being sold under the order of the District Court to the plaintiff, the title is vested in him, the same as if the conveyance had been executed by Hall.

On the appointment and qualification of the assignee, the property of the bankrupt, under the act of Congress, became vested in him, for the benefit of the creditors of the bankrupt. But there was no assignment in fact made by Hall. He made application for relief under the law, and may be said to be a voluntary bankrupt; but there was no other assignment of his effects than that which resulted fiom the operation of the law. As, under the Constitution, Congress exercised an exclusive jurisdiction over the subject of bankruptcy, the same rule of procedure extended throughout the Union. But the act of Congress could have no extra-territorial effect. Texas was an independent republic at the time of the decree in bankruptcy, and consequently no claim under it, even as regards personal property, in that republic, could be made, except on the ground of comity. And on our own principles this could not be done, to the injury of local creditors.

Hall in his lifetime might have conveyed this property by observing the forms adopted by Texas. But the assignee took no legal estate in the premises under the bankrupt law; and consequently he could not convey such an estate to the plaintiff. No proposition would seem to be clearer of doubt than this. It is believed that no sovereignty has, at any time, assumed the power, by legislation or otherwise, to regulate the distribution or conveyance of real estate in a foreign government. There is no pretence that this government, through the agency of a bankrupt law, could subject the real property in Texas, or in any other foreign government, to the payment of debts. This can only be done by the laws of the sovereignty where such property may be situated.

It is said that Texas, by an act of the 17th of March, 1841, has recognized the validity of foreign bankrupt laws. There is nothing in that act which can affect the question now under consideration. It merely provides, that where relief has been given under any foreign bankrupt or insolvent law to an individual who has surrendered his property, and who afterwards shall become a citizen of Texas, he shall be considered as discharged from his debts, unless fraud be shown.

But if the assignee had power to convey the property, there would be two fatal objections to the title of the plaintiff. The deed is not executed according to the form required by the laws of Texas for the conveyance of real estate. Under such an instrument the fee does not pass. And in the second place, if the deed were operative to convey the fee, the property would be subject to satisfy the claims of the Texas creditors of Hall. Administration of his estate was granted to Bennett, who took upon himself the trust, and made returns to the court of the debts of Hall, amounting, as above stated, to the sum of eighteen hundred dollars, before he had any notice of the bankrupt proceeding. And it is averred that these creditors trusted Hall, knowing he possessed the property in controversy. Bennett, it is insisted, represents only the rights of the deceased, and, the right to this property having become divested by the decree in bankruptcy, he can set up no objection to the plaintiff's title. This position is not sustainable. The administrator represents the rights of creditors, and as regards this controversy must be considered as standing in their stead. He is responsible to the court for the faithful administration of all the assets of the deceased within the jurisdiction under which he acts. The creditors who have substantiated their claims were not subject to the decree of bankruptcy. From the property which Hall was known to possess in Texas, it is alleged they gave him credit, and a conveyance of the property, under the circumstances, could only be held valid by a disregard of the rights of the Texas creditors. This, we suppose, could not receive the sanction of the courts of that State. Whether advantage could be taken of this in the present procedure, if the deed to the plaintiff conveyed the fee, it is unnecessary to determine.

The annexation of Texas to the United States long after the decree of bankruptcy, and a short time before the deed by the assignee was made to the plaintiff, does not affect the question. At the time the decree in bankruptcy was pronounced, there was no jurisdiction over this property; and the subsequent annexation cannot enlarge that jurisdiction. The rights of creditors were fixed by the decree.

We deem it unnecessary to examine the other exceptions, as we are all of the opinion, that the title to the property in controversy did not pass to the assignee, under the decree in bankruptcy. The judgment of the District Court is, therefore, affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States for the District of Texas, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said District Court in this cause be, and the same is hereby, affirmed, with costs.