# SECURITY TRUST COMPANY *v.* DODD, MEAD & CO.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 188. Argued and submitted January 23, 1899. — Decided April 11, 1899.

With regard to the operation of a voluntary or common law assignment of his property by an insolvent debtor for the benefit of his creditors upon property situated in other States, there is a general consensus of opinion that it will be respected, except so far as it comes in conflict with the rights of local creditors, or with the laws or public policy of the State in which it is sought to be enforced.

With respect to statutory assignments of the property of an insolvent debtor, the prevailing American doctrine is, that a conveyance under a state insolvent law operates only upon property within the territory of that State, and with respect to property in another State it is given only such effect as the laws of that State permit, and in general must give way to claims of creditors pursuing their remedies there.

The execution and delivery by Merrill & Company to the Security and Trust Company in Minnesota of an assignment of their property for the benefit of their creditors, made under the insolvent laws of that State, and the acceptance thereof by the assignee and its qualification thereunder, and the notice thereof to Mudge & Sons in Massachusetts, who held personal property belonging to the said assignors, did not vest in the assignee such a title to that property that it could not, after such notice, be lawfully seized by attachment in an action instituted in Massachusetts by creditors of the insolvents who were citizens of New York, and who had notice of the assignment, but had not proved their claims against the assigned estate, nor filed a release thereof.

THIS was an action originally instituted in the district court for the second judicial district of Minnesota, by the Security Trust Company, as assignee of the D. D. Merrill Company, a corporation organized under the laws of Minnesota, against the firm of Dodd, Mead & Company, a partnership resident in New York, to recover the value of certain stereotyped and electrotyped plates for printing books, upon the ground that the defendants had unlawfully converted the same to their own use.   The suit was duly removed from the state court to the Circuit Court of the United States for the District of Minnesota, and was there tried.   Upon such trial the following facts appeared:

The D. D. Merrill Company having become insolvent and unable to pay its debts in the usual course of business, on September 23, 1893, executed to the Security Trust Company, the plaintiff in error, an assignment under and pursuant to the provisions of chapter 148 of the laws of 1881 of the State of Minnesota, which assignment was properly filed in the office of the clerk of the district court.   The Trust Company accepted the same, qualified as assignee, took possession of such of the property as was found in Minnesota, and disposed of the same for the benefit of creditors, the firm of Dodd, Mead & Company having full knowledge of the execution and filing of such assignment.

At the date of this assignment, the D. D. Merrill Company was indebted to Dodd, Mead & Company of New York in the sum of $1249.98, and also to Alfred Mudge & Sons, a Boston copartnership, in the sum of $126.80, which they duly assigned and transferred to Dodd, Mead & Company, making the total indebtedness to them $1376.78.

Prior to the assignment, the D. D. Merrill Company was the owner of the personal property for the value of which this suit was brought. This property was in the custody and possession of Alfred Mudge & Sons at Boston, Massachusetts, until the same was attached by the sheriff of Suffolk County, as hereinafter stated.

The firm of Alfred Mudge & Sons was, prior to March 8, 1894, informed of the assignment by the Merrill Company, and at about the date of such assignment a notice was served upon them by George E. Merrill to the effect that he, Merrill, took possession of the property in their custody for and in behalf of the Security Trust Company, assignee aforesaid.

On March 8, 1894, Dodd, Mead & Company commenced an action against the D. D. Merrill Company in the superior court of the county of Suffolk, upon their indebtedness, caused a writ of attachment to be issued, and the property in possession of Mudge & Sons seized upon such writ. A summons was served by publication in the manner prescribed by the Massachusetts statutes, although there was no personal service upon the Merrill Company. The Security Trust Company, its assignee, was informed of the bringing and pendency of this suit and the seizure of the property, prior to the entering of a judgment in said action, which judgment was duly rendered August 6, 1894, execution issued, and on September 27, 1894, the attached property was sold at public auction to Dodd, Mead & Company, the execution creditors, for the sum of $1000.

Upon this state of facts, the Circuit Court of Appeals certified to this court the following questions:

"First. Did the execution and delivery of the aforesaid deed of assignment by the D. D. Merrill Company to the Security Trust Company and the acceptance of the same by

the latter company and its qualification as assignee thereunder, vest said assignee with the title to the personal property aforesaid, then located in the State of Massachusetts, and in the custody and possession of said Alfred Mudge & Sons?

"Second. Did the execution and delivery of said assignment and the acceptance thereof by the assignee and its qualification thereunder, in the manner aforesaid, together with the notice of such assignment which was given, as aforesaid, to Alfred Mudge & Sons prior to March 8, 1894, vest the Security Trust Company with such a title to the personal property aforesaid on said March 8, 1894, that it could not on said day be lawfully seized by attachment under process issued by the superior court of Suffolk County, Massachusetts, in a suit instituted therein by creditors of the D. D. Merrill Company, who were residents and citizens of the State of New York, and who had notice of the assignment but had not proven their claim against the assigned estate nor filed a release of their claim?"

*Mr. Edmund S. Durment,* for the Security Trust Company, submitted on his brief.

*Mr. James E. Markham* for Dodd, Mead & Co. *Mr. Albert R. Moore* and *Mr. George W. Markham* were on his brief.

MR. JUSTICE BROWN, after stating the case. delivered the opinion of the court.

This case raises the question whether an assignee of an insolvent Minnesota corporation can maintain an action in the courts of Minnesota for the conversion of property formerly belonging to the insolvent corporation, which certain New York creditors had attached in Massachusetts, and sold upon execution against such corporation. The question was also raised upon the argument how far an assignment, executed in Minnesota, pursuant to the general assignment law of that State, by a corporation there resident, is available

to pass personal property situated in Massachusetts as against parties resident in New York, who, subsequent to the assignment, had seized such property upon an attachment against the insolvent corporation.

The assignment was executed under a statute of Minnesota, the material provisions of which are hereinafter set forth. The instrument makes it the duty of the assignee. "to pay and discharge, in the order and precedence provided by law, all the debts and liabilities now due or to become due from said party of the first part, together with all interest due and to become due thereon, to all its creditors who shall file releases of their debts and claims against said party of the first part, according to chapter 148 of the General Laws of the State of Minnesota for the year 1881, and the several laws amendatory and supplementary thereof, and if the residue of said proceeds shall not be sufficient to pay said debts and liabilities and interest in full, then to apply the same so far as they will extend to the payment of said debts and liabilities and interest, proportionately on their respective amounts, according to law and the statute in such case made and provided; and if, after the payment of all the costs, charges and expenses attending the execution of said trust, and the payment and discharge in full of all the said debts of the party of the first part, there shall be any surplus of the said proceeds remaining in the hands of the party of the second part, then, Third, repay such surplus to the party of the first part, its successors and assigns."

The operation of voluntary or common law assignments upon property situated in other States has been the subject of frequent discussion in the courts, and there is a general consensus of opinion to the effect that such assignments will be respected, except so far as they come in conflict with the rights of local creditors, or with the laws or public policy of the State in which the assignment is sought to be enforced. The cases in this court are not numerous, but they are all consonant with the above general principle. *Black* v. *Zacharie,* 3 How. 483; *Livermore* v. *Jenckes,* 21 How. 126; *Green* v. *Van Buskirk,* 5 Wall. 307; *Hervey* v. *R. I. Locomotive Works,* 93 U. S. 664;

*Cole* v. *Cunningham*, 133 U. S. 107; *Barnett* v. *Kinney*, 147 U. S. 476.

But the rule with respect to statutory assignments is somewhat different. While the authorities are not altogether harmonious, the prevailing American doctrine is that a conveyance under a state insolvent law operates only upon property within the territory of that State, and that with respect to property in other States it is given only such effect as the laws of such State permit; and that, in general, it must give way to claims of creditors pursuing their remedies there. It passes no title to real estate situated in another State. Nor, as to personal property, will the title acquired by it prevail against the rights of attaching creditors under the laws of the State where the property is actually situated. *Harrison* v. *Sterry*, 5 Cranch, 289, 302; *Ogden* v. *Saunders*, 12 Wheat. 213; *Booth* v. *Clark*, 17 How. 322; *Blake* v. *Williams*, 6 Pick. 286; *Osborn* v. *Adams*, 18 Pick. 245; *Zipcey* v. *Thompson*, 1 Gray, 243; *Abraham* v. *Plestoro*, 3 Wend. 538, overruling *Holmes* v. *Remsen*, 4 Johns. Ch. 460; *Johnson* v. *Hunt*, 23 Wend. 87; *Hoyt* v. *Thompson*, 5 N. Y. 320; *Willitts* v. *Waite*, 25 N. Y. 577; *Kelly* v. *Crapo*, 45 N. Y. 86; *Barth* v. *Backus*, 140 N. Y. 230; *Weider* v. *Maddox*, 66 Tex. 372; *Rhawn* v. *Pearce*, 110 Illinois, 350; *Catlin* v. *Wilcox Silver Plate Co.*, 123 Indiana, 477. As was said by Mr. Justice McLean in *Oakey* v. *Bennett*, 11 How. 33, 44, " A statutable conveyance of property cannot strictly operate beyond the local jurisdiction. Any effect which may be given to it beyond this does not depend upon international law, but the principle of comity ; and national comity does not require any government to give effect to such assignment when it shall impair the remedies or lessen the securities of its own citizens. And this is the prevailing doctrine in this country. A proceeding *in rem* against the property of a foreign bankrupt, under our local laws, may be maintained by creditors, notwithstanding the foreign assignment." Similar language is used by Mr. Justice Story in his Conflict of Laws, § 414.

The statute of Minnesota, under which this assignment was made, provides in its first section that any insolvent debtor

"may make an assignment of all his unexempt property for
the equal benefit of all his *bona fide* creditors, who shall file
releases of their demands against such debtor, as herein pro-
vided." That such assignments shall be acknowledged and
filed, and if made within ten days after the assignor's prop-
erty has been garnished or levied upon, shall operate to vacate
such garnishment or levy at the option of the assignee, with cer-
tain exceptions. The second section provides for putting an
insolvent debtor into involuntary bankruptcy on petition of
his creditors, upon his committing certain acts of insolvency,
and for the appointment by the court of a receiver with power
to take possession of all his property, not exempt, and distrib-
ute it among his creditors. Under either section only those
creditors receive a benefit from the act who file releases to the
debtor of all their demands against him. This statute was
held not to conflict with the Federal Constitution in *Denny* v.
*Bennett*, 128 U. S. 489.

The construction given to this act by the Supreme Court of
Minnesota has not been altogether uniform. In *Wendell* v.
*Lebon*, 30 Minnesota, 234, the act was held to be constitutional.
It was said that "the act in its essential features is a bankrupt
law;" but it was intimated that it included all the debtor's
property wherever situated; "and while other jurisdictions
might, on grounds of policy, give preference to domestic at-
taching creditors over foreign assignees or receivers in bank-
ruptcy, yet, subject to this exception, they would, on principles
of comity, recognize the rights of such assignees or receivers
to the possession of the property of the insolvent debtor."

In *In re Mann*, 32 Minnesota, 60, the act was, in effect, again
pronounced "a bankrupt law, providing for voluntary bank-
ruptcy by the debtor's assignment;" and in this respect differ-
ing from a previous assignment law. See also *Simon* v. *Mann*,
33 Minnesota, 412, 414.

In *Jenks* v. *Ludden*, 34 Minnesota, 482, it was held that the
courts of that State had no right to enjoin the defendant, who
was a citizen of Minnesota, from enforcing an attachment lien
on certain real property in Wisconsin owned by the insolvent
debtors, although the execution of the assignment might, under

the Minnesota statute, have dissolved such an attachment in that State; and that, even if they had the power to do so, they ought not to exercise their discretion in that case, where the only effect might be to enable non-resident creditors to step in and appropriate the attached property. The court repeated the doctrine of the former case, that the act was a bankrupt act; the assignee being in effect an officer of the court, and the assigned property being in *custodia legis*, and administered by the court or under its direction. The court added: "We may also take it as settled that the question whether property situated in Wisconsin is subject to attachment or levy by creditors, notwithstanding any assignment made in another State, is to be determined exclusively by the laws of Wisconsin." To the same effect see *Daniels* v. *Palmer*, 35 Minnesota, 347; *Warner* v. *Jaffray*, 96 N. Y. 248.

Upon the other hand, in *Covey* v. *Cutler*, 55 Minnesota, 18, an insolvent debtor who had made an assignment under this statute, had a certain amount of salt in Wisconsin, which the defendants had attached in a Wisconsin court. The salt was sold upon the judgment, bid in by them, and the assignee in Minnesota brought an action to recover the value of the salt. Defendants answered, claiming that the assignee never took possession of the salt, and that the Minnesota assignment was ineffectual to transfer the title to property in Wisconsin as against attaching creditors there. Plaintiff was held entitled to judgment upon the ground that a voluntary conveyance of personal property, valid by the law of the place, passed title wherever the property may be situated, and that such transfers, upon principles of comity, would be recognized as effectual in other States when not opposed to public policy or repugnant to their laws. It is difficult to reconcile this with the previous cases, or with that of *Green* v. *Van Buskirk*, 7 Wall. 139. The assignment was apparently treated as a voluntary or common law assignment. This ruling was repeated in *Hawkins* v. *Ireland*, 64 Minnesota, 339, in which an assignment under this statute was said not to be involuntary but voluntary, and that a court of equity had the power to, and would, restrain one of its own citizens, of whom it had jurisdic-

tion, from prosecuting an action in a foreign State or jurisdiction, whenever the facts of the case made it necessary to do so, to enable the court to do justice and prevent one of its citizens from taking an inequitable advantage of another. This accords with *Dehon* v. *Foster*, 4 Allen, 545, and *Cunningham* v. *Butler*, 142 Mass. 47 ; *S. C., sub nom. Cole* v. *Cunningham*, 133 U. S. 107.

The earlier opinions of the Supreme Court of Minnesota to the effect that the statute in question was a bankrupt act, were followed by the Supreme Court of Wisconsin in *McClure* v. *Campbell*, 71 Wisconsin, 350, in which it was held that the assignment could have no legal operation out of the State in which the proceedings were had, and that the decision of the Supreme Court of Minnesota that the act of 1881 was a bankrupt act was binding. The contest was between the assignee of the insolvent debtor and a creditor who had attached the property of the insolvent in Wisconsin. The court held that the plaintiff, the assignee, took no title to such property, and was not entitled to its proceeds. In delivering the opinion the court said : " We think the question is not affected by the fact that the property, when seized, was in the possession of the assignee, or that the attaching creditor is a resident of the State in which the insolvency or bankruptcy proceedings were had. . . . While some of them " (the cases) " may, under especial circumstances, extend the rule of comity to such a case, and thus give an extraterritorial effect to somewhat similar assignments, we are satisfied that the great weight of authority is the other way. The rule in this country is, we think, that assignments by operation of law in bankruptcy or insolvency proceedings, under which debts may be compulsorily discharged without full payment thereof, can have no legal operation out of the State in which such proceedings were had."

In *Franzen* v. *Hutchinson*, 94 Iowa, 95 ; 62 N. W. Rep. 698, the Supreme Court of Iowa had this statute of Minnesota under consideration, and held that as the creditors received no benefit under the assignment, unless they first filed a release of all claims other than such as might be paid under the

assignment, it would not be enforced in Iowa. It was said that the assignment, which was that of an insurance company, was invalid, and that in an action by the assignee for premiums collected by the defendants, who were agents of the company, the latter could offset claims for unearned premiums held by policy holders at the time of the assignment and by them assigned to defendants after the assignment to plaintiffs.

Notwithstanding the two later cases in Minnesota above cited, we are satisfied that the Supreme Court of that State did not intend to overrule the prior decisions to the effect that the act was substantially a bankrupt or insolvent law. It is true that in these cases a broader effect was given to this act with respect to property in other States than is ordinarily given to statutory assignments, though voluntary in form. But the court was speaking of its power over its own citizens, who had sought to obtain an advantage over the general creditors of the insolvent by seizing his property in another State. There was no intimation that the prior cases were intended to be overruled, nor did the decisions of the later cases require that they should be.

So far as the courts of other States have passed upon the question, they have generally held that any state law upon the subject of assignments, which limits the distribution of the debtor's property to such of his creditors as shall file releases of their demands, is to all intents and purposes an insolvent law; that a title to personal property acquired under such laws will not be recognized in another State, when it comes in conflict with the rights of creditors pursuing their remedy there against the property of the debtor, though the proceedings were instituted subsequent to and with notice of the assignment in insolvency. The provision of the statute in question requiring a release from the creditors in order to participate in the distribution of the estate, operates as a discharge of the insolvent from his debts to such creditors — a discharge as complete as is possible under a bankrupt law. An assignment containing a provision of this kind would have been in many, perhaps in most, of the States void at common law. *Grover* v. *Wakeman*, 11 Wend. 187; *Ingraham*

v. *Wheeler*, 6 Conn. 277; *Atkinson* v. *Jordan*, 5 Hammond, 293; Burrill on Assignments, 232 to 256. As was said in *Conkling* v. *Carson*, 11 Ill. 503 : "A debtor in failing circumstances has an undoubted right to prefer one creditor to another, and to provide for a preference by assigning his effects; but he is not permitted to say to any of his creditors that they shall not participate in his present estate, unless they release all right to satisfy the residue of their debts out of his future acquisitions." In *Brashear* v. *West*, 7 Pet. 608, an assignment containing a provision of this kind was upheld with apparent reluctance solely upon the ground that in Pennsylvania, where the assignment was made, it had been treated as valid. If the assignment contain this feature, the fact that it is executed voluntarily and not *in invitum* is not a controlling circumstance. In some States a foreign assignee under a statutory assignment, good by the law of the State where made, may be permitted to come into such State and take possession of the property of the assignor there found, and withdraw it from the jurisdiction of that State in the absence of any objection thereto by the local creditors of the assignor; but in such case the assignee takes the property subject to the equity of attaching creditors, and to the remedies provided by the law of the State where such property is found.

A somewhat similar statute of Wisconsin was held to be an insolvent law in *Barth* v. *Backus*, 140 N. Y. 230, and an assignment under such statute treated as ineffectual to transfer the title of the insolvent to property in New York, as against an attaching creditor there, though such creditor was a resident of Wisconsin. A like construction was given to the same statute of Wisconsin in *Townsend* v. *Coxe*, 151 Illinois, 62. It was said of this statute, (and the same may be said of the statute under consideration,) "it is manifest from these provisions that a creditor of an insolvent debtor in Wisconsin, who makes a voluntary assignment, valid under the laws of that State, can only avoid a final discharge of the debtor from all liability on his debt, by declining to participate in any way in the assignment proceedings. He is, therefore, compelled to consent to a discharge as to so much of his debt

as is not paid by dividends in the insolvent proceedings or take the hopeless chance of recovering out of the assets of the assigned estate remaining after all claims allowed have been paid." To the same effect are *Upton* v. *Hubbard*, 28 Conn. 274; *Paine* v. *Lester*, 44 Conn. 196; *Weider* v. *Maddox*, 66 Texas, 372; *Catlin* v. *Wilcox Silver Plate Co.*, 123 Indiana, 477; *Boese* v. *King*, 78 N. Y. 471.

In *Taylor* v. *Columbia Insurance Co.*, 14 Allen, 353, it is broadly stated that "when, upon the insolvency of a debtor, the law of the State in which he resides assumes to take his property out of his control, and to assign it by judicial proceedings, without his consent, to trustees for distribution among his creditors, such an assignment will not be allowed by the courts of another State to prevail against any remedy which the laws of the latter afford to its own citizens against property within its jurisdiction." But the weight of authority is, as already stated, that it makes no difference whether the estate of the insolvent is vested in the foreign assignee under proceedings instituted against the insolvent or upon the voluntary application of the insolvent himself. The assignee is still the agent of the law, and derives from it his authority. *Upton* v. *Hubbard*, 28 Conn. 274.

While it may be true that the assignment in question is good as between the assignor and the assignee, and as to assenting creditors, to pass title to property both within and without the State, and, in the absence of objections by non-assenting creditors, may authorize the assignee to take possession of the assignor's property wherever found, it cannot be supported as to creditors who have not assented, and who are at liberty to pursue their remedies against such property of the assignor as they may find in other States. *Bradford* v. *Tappan*, 11 Pick. 76; *Willitts* v. *Waite*, 25 N. Y. 577; *Catlin* v. *Wilcox Silver Plate Co.*, 123 Indiana, 477, and cases above cited.

We are therefore of opinion that the statute of Minnesota was in substance and effect an insolvent law; was operative as to property in Massachusetts only so far as the courts of that State chose to respect it, and that so far as the plaintiff,

as assignee of the D. D. Merrill Company, took title to such property, he took it subservient to the defendants' attachment. It results that the property of the D. D. Merrill Company found in Massachusetts was liable to attachment there by these defendants, and that the courts of Minnesota are bound to respect the title so acquired by them.

The second question must therefore be answered in the negative, and as this disposes of the case, no answer to the first question is necessary.