**VAN SCHAICK, Superintendent of Insurance,
v. PARSONS, Sheriff, et al.
No. 1613.**

District Court, D. Montana.
July 8, 1935.

William Scallon and W. T. Pigott, both of Helena, Mont., for plaintiff.

John G. Brown, of Helena, Mont., L. V. Ketter, of Butte, Mont., John C. Erickson, of Helena, Mont., and W. F. O'Leary, of Great Falls, Mont., for defendants.

PRAY, District Judge.

This cause came on regularly for trial before the court, according to stipulation, followed by oral arguments and briefs of counsel for the respective parties. The material facts, briefly stated, are that Thomas Reilly, a citizen of Montana, brought an action against the Southern Surety Company of New York in the state of Nebraska and obtained judgment; later he brought suit on that judgment in Montana, attaching certain personal property of the Surety Company found therein, and obtained judgment against it. The Surety Company appeared in the Nebraska case,

but before the entry of judgment its dissolution occurred through statutory judicial proceedings instituted against it in the state of New York. The Surety Company had been dissolved at the time Reilly commenced his action in the state court of Montana.

After reviewing the facts it seems probable that the most important question presented is, whether Reilly could sue the Surety Company in Montana after its dissolution in New York and when it was in the hands of a liquidator in that state. In the Mieyr Case, 94 Mont. 508, 23 P.(2d) 959, 962, presenting a similar state of facts, section 6013, Revised Codes of 1921, which was cited and construed therein, contained this provision: "Nor does the dissolution of any such corporation, take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which has been previously incurred." This portion of the section had not been previously construed by the Montana Supreme Court. Reference was then made to the decisions of the states of Illinois and Colorado having similar statutes, also to the Circuit Court of Appeals of the Eighth Circuit construing the Colorado statute. Hazard v. Park, 294 F. 40. At this point the court said in the Mieyr Case, supra: "Clearly, if the action of appellants were held to have abated upon the entry of a decree of dissolution by the Iowa court, their remedy, which accrued long prior thereto, would be impaired. * * * The question of continuing actions by or against a corporation after its dissolution depends upon the laws of the state in which the action is pending, and a foreign statute relating thereto is of no avail."

Next the Constitution is cited, section 11 of article 15, providing that no foreign corporation shall be allowed to exercise or enjoy within the state any greater rights or privileges that are accorded domestic corporations. Section 6659 makes foreign corporations subject to all the liabilities, restrictions, and duties imposed upon domestic corporations, giving them no other or greater powers.

The court held this action did not abate under the Montana Constitution and statutes on the entry of a decree of dissolution, in Iowa, and that Mieyr had the right to attach the property of the Surety Company in Montana, at the time he attempted to secure the appointment of a receiver, unless the appointment of a receiver in Iowa would prevent it. On this question the court said: "Even though it be conceded that the appointment of the receiver in the state of Iowa operated to transfer the property of the defunct surety company to him, such involuntary assignment in aid of a statutory judicial proceeding will not be recognized outside of the jurisdiction of the appointment, where the rights of domestic creditors are involved, if the receiver has not obtained possession of the property and where the creditors have obtained rights or liens upon the property even after the appointment in the foreign jurisdiction." Pomeroy's Equitable Remedies (4th Ed.) § 1674, p. 3896, was cited, also other authorities, both federal and state.

In the Mieyr Case, the court, referring to the Williard Case (Clark v. Williard, 292 U. S. 112, 54 S. Ct. 615, 619, 78 L. Ed. 1160; Mieyr v. Federal Surety Co. et al., 97 Mont. 503, 34 P.(2d) 982), also before it and based upon suit before and judgment after dissolution of the foreign Surety Co., said: "The property of the Federal Surety Company within the state of Montana at the time of the levy of the execution by Williard et al., not being in possession of the Iowa receiver, was subject to levy, and the levy made under the execution in May, 1932, is good and valid." Mieyr (94 Mont. 508, 23 P.(2d) 959, 964) asked for the appointment of a receiver; his petition for that purpose was denied on the grounds that he was a general creditor and had no right to the appointment of receiver, and besides had an adequate remedy in the issuance and levy of a writ of attachment by which he could be fully protected. The first Mieyr Case reported was complicated by a contest over the appointment of an ancillary receiver in Montana which was appealed with the result above stated.

In the Williard Case, above, the Supreme Court of the United States said: "We think the Supreme Court of Montana denied full faith and credit to the statutes and judicial proceedings of Iowa in holding, as it did, that the petitioner was a receiver deriving title through a judicial proceeding, and not through the charter of its being and the succession there prescribed. * * * In thus holding we do not say that there is an invariable rule by which the title of a statutory liquidator must prevail over executions and attach-

ments outside of the state of his appointment. The subject is involved in confusion, with decisions pro and con. * * * Whether there is in Montana a local policy, expressed in statute or decision, whereby judgments and attachments have a preference over the title of a charter liquidator, is a question as to which the Supreme Court of that state will speak with ultimate authority. It has not spoken yet. The tendency in most of the states is to give priority to the title unless a contrary policy is expressed with reasonable clarity. * * * No statute or decision brought to our notice from Montana removes the question from the field of doubt. True, there are the statutes heretofore referred to whereby suit may be maintained against foreign corporations after dissolution on the same basis as against domestic ones. Nothing in those provisions declares the existence of a policy to allow the assets of an insolvent corporation to be torn to pieces at the suit of rival creditors when they could be distributed equally and without sacrifice at the hands of a receiver. At all events, the policy, if it exists, is indicated too obscurely to permit us to accept it until so instructed by the Montana court. The drastic consequences of acceptance attest the need of caution. Partnerships and individuals, if hard pressed, may resort to a court of bankruptcy and thus conserve their assets. Business corporations may have their assets equally distributed through involuntary proceedings. But insurance corporations, like banks, are excluded from bankruptcy altogether (11 U. S. C. § 22 (b) [11 USCA § 22 (b)], and must submit to dismemberment, however great the waste or inequality, unless receivers are appointed. The respondents would have us say that submission to such consequences is exacted by an unbending rule of law. We have no thought to impose our reading of the local statutes and decisions upon the courts of the locality. What we are about to say as to their meaning does no more than explain the grounds for our understanding that the courts of Montana have left the question open. If the law were clear beyond debate, as counsel for the respondents has contended that it is, our duty might be to dispose of the entire controversy now instead of remanding it to the state court for further action there."

Then follows a review of Montana cases relating to the subject by Mr. Justice Cardozo, who wrote the opinion, concurred in by seven members of the court, with the statement:

"From this survey of the decisions in Montana there results this truth, if nothing more, that there has been no definitive pronouncement as to the circumstances justifying a receivership for an insolvent corporation, and that the question is left open whether receivers of such a corporation will be appointed after dissolution to prevent waste or inequality. If that is so, it results also that the question is still open whether executions may be subordinated to the title of a foreign liquidator without a forbidden discrimination between corporations organized in Montana and those from other states. A statute preserving remedies after a decree of dissolution does not mean that for every purpose a corporation, though dissolved, is still a juristic person, or that equity is indifferent as to the mode of marshalling the assets. All that it means is that suits shall not abate, but may be prosecuted to judgment as if the corporation were in being. What will be done afterwards in the enforcement of a judgment will vary with the circumstances. When a charter liquidator whose standing is recognized in Montana is decreed to have an interest superior to the lien of later executions, as if his position were that of a receiver appointed by the local courts, there is no resulting inequality between foreign and domestic corporations, no favoring of the one class in hostility to the other. So, at least, the Montana court may not unreasonably decide. By hypothesis the domestic corporation after dissolution may be placed, upon a proper showing, in the hands of a receiver, and its assets ratably distributed. The foreign corporation, represented by a foreign liquidator, may be subjected to the same restraints. If supplementary directions are thought to be appropriate to the end that local assets may be kept within Montana till local creditors are paid their share of all the assets everywhere, there is power in a court of equity to assure the requisite equality. [Cases cited.]

"To resume: The Supreme Court of Montana will determine whether there is any local policy whereby an insolvent foreign corporation in the hands of a liquidator with title must submit to the sacrifice of its assets or to their unequal distribution by writs of execution. If such a policy exists and the foreign liquidator is thus

displaced, other questions may remain as to the power of the state which there is no occasion to consider in advance of the event. The decree should be vacated in so far as it adjudges the validity and priority of the respondents' execution * * * and the cause remanded to the Supreme Court of Montana for further proceedings not inconsistent with this opinion. It is so ordered."

The Montana Supreme Court, in Mieyr v. Federal Surety Co. et al., 97 Mont. 503, 34 P.(2d) 982, 986, seems to have covered the matters principally under consideration in the Williard Case, supra, wherein it. held: "As to persons and corporations who may not be adjudged involuntary bankrupts, and as against whom writs of attachment may issue, no exception is made under our law whereby, as to such persons or corporations if insolvent, preferences resulting from attachments may be released at the instance of other creditors, resident or otherwise. The relegation of the creditors of insolvent corporations or individuals to a race of diligence 'may be pernicious in its effect' and may not result in justice according to judicial notion. The Legislature has by the all-inclusive attachment laws made them applicable to all persons and corporations (except banking corporations) alike, without regard to the solvency or insolvency of the attachment debtors. The Legislature has spoken; it has declared the policy of the state, which is binding upon us. It may be well to note in passing that the rights to secure writs of attachment in this state are available to residents and nonresidents alike, as against residents and nonresidents alike. A nonresident may come into Montana and secure a writ of attachment upon exactly the same terms as one of its citizens."

The doctrine of comity was also given attention wherein it is attempted to assert rights under assignments for the benefit of creditors in other states in opposition to the claims of local creditors. The court cited the case of Security Trust Company v. Dodd, Mead & Co., 173 U. S. 624, 19 S. Ct. 545, 43 L. Ed. 835, holding that such voluntary assignments should be given force in other states in respect to property found there, except where they come in conflict with the rights of local creditors, or with the public policy of the state; that "national comity does not require any government to give effect to such assignment [for the benefit of creditors], when it shall impair the remedies or lessen the securities of its own citizens." Oakey v. Bennett, 11 How. 33, 44, 13 L. Ed. 593.

In the Mieyr Case, Clark, the statutory liquidator, did not appear in the Montana courts and assert his right to have a receiver appointed until long after the levy of the execution. In the present case the New York liquidator did not appear in the Montana courts and ask for the appointment of a receiver until after the levy of the writ of attachment in the Reilly case, and he thereafter abandoned his amended complaint in intervention. It was held in the Williard Case that there is no invariable rule by which the title of a statutory liquidator must prevail over executions and attachments outside the state of his appointment. The question was also considered, in the last Mieyr Case, as to the power of the state to grant a preference or priority to local creditors over those from other states in contravention of section 2, article 4, of the Federal Constitution, and the court therein distinguished the case of Blake v. McClung, 172 U. S. 239, 19 S. Ct. 165, 43 L. Ed. 432, showing that it could have no application to the Mieyr Case; and, by the same reasoning none to the Reilly case here under consideration. Concluding the Montana Supreme Court there held that: "The lien of appellants acquired by virtue of the levy of the execution is determined to be valid as against and prior to the claim of the respondent Clark, and of the receiver appointed by the district court; that the claim of the respondent Clark, and of the receiver so appointed, is superior to the claim of all persons attempting to assert a lien on the assets of the Federal Surety Company which was not perfected prior to August 3, 1932."

In spite of the difficulties attending a solution of this question, the Montana Supreme Court appears to have taken the position, in construing the local constitutional and statutory provisions applicable, that the local creditor may protect himself by attachment before the foreign liquidator has taken possession of the property. It would seem that the proper procedure on the part of the liquidator would be to apply for the appointment of an ancillary receiver in the foreign jurisdiction in order that the property there of the dissolved corporation may be brought within his control. The state Supreme Court held that the

**658**

Legislature had spoken, and had declared the policy of the state, which was binding upon that court; the decisions of the Supreme Court of Montana in thus construing the provisions of the Constitution, and statutes of that state, read in connection with the Williard Case, supra, are likewise binding upon this court in this cause. The able briefs of counsel for the plaintiff have been given thoughtful consideration, and the court is much impressed by their argument in respect to the commencement and maintenance of actions after dissolution of the foreign corporation, but the three leading authorities here relied upon do not seem to support their contention.

In view of the foregoing, the decision here is in favor of the defendants with costs.