## In re THOMAS.

(District Court, W. D. Pennsylvania. July 23, 1900.)

No. 331.

BANKRUPTCY—ACT OF INSOLVENCY—SALE OF PROPERTY ON EXECUTION.

For an insolvent debtor to suffer an execution to issue on a judgment, and to permit his personal property to be levied on and sold thereunder, without taking affirmative action to pay said judgments and to vacate and discharge said executions, is an act of bankruptcy within Bankr. Act 1898, § 3, providing that acts of bankruptcy shall consist of an insolvent debtor's

having suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, five days before a sale, vacated or discharged such preference.

In Bankruptcy. Sur report of commissioner.

Q. A. Gordon and C. N. McClure, for execution creditors.

W. C. Pettit and A. W. Williams, for petitioning creditors.

BUFFINGTON, District Judge. In this case certain judgments were entered against Mrs. Rose Thomas, and executions thereon issued on May 1, 1899, and her personal property, consisting of the stock in her store and household goods, levied on and advertised for sale on May 9th. On May 6th an involuntary petition in bankruptcy was filed against her, alleging she had taken no steps to vacate or discharge the executions. To this she made answer, not denying her alleged insolvency, but averring she had not committed an act of bankruptcy. By agreement of counsel the personalty levied on was sold by the sheriff, the proceeds held subject to the order of this court, and a commissioner appointed to take testimony both as to the question of the validity of the executions and of adjudication on the petition, and report the facts, with his conclusions of law thereon. In pursuance of this appointment the commissioner makes report that the executions were valid liens, and the petition in bankruptcy should be dismissed. The facts are that on May 1, 1899, Mrs. Thomas was, inter alia, indebted upon several judgment notes to these execution creditors. These notes were past due, and she seemed to have taken no steps whatever providing for their payment or renewal. Judgments were entered and executions issued on these notes without the knowledge or solicitation of Mrs. Thomas. By her failure to pay her matured obligations, which contained warrants of attorney to confess judgments and issue executions, she suffered and permitted such creditors to obtain a levy on her insolvent estate, which, under the Pennsylvania practice, gave such executions a preference thereon; and by her failure to pay or otherwise vacate or discharge such executions she made possible a sale of her entire personal estate, and the absorption of its entire proceeds by such preferred creditors. The answer does not deny her alleged insolvency, and the fact of insolvency is patent. The bankrupt act provides (section 3) that:

"Acts of bankruptcy by a person shall consist of his having * * * suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

The preference in the present case does not consist in the entry of the judgment. No preference was obtained thereby. It consists in the levy upon personal property enforced by a subsequent sale. Did the defendant, within the meaning of the bankrupt act, thereby suffer or permit a preference through legal proceedings? It is true she took no active, affirmative steps to create such preference, other than the failure to meet a matured judgment note or provide for its extension; but inasmuch as she took no steps to prevent the enforcement, by sale, of such preference, she must be held to have suffered or permitted

these creditors to obtain preference. "To permit" is defined as not to hinder. Webster defines "permit" as more negative than "allow"; that it imports only acquiescence or an abstinence from prevention,— while "suffer" he defines as having an even stronger passive and negative sense than permit, and as implying sometimes mere indifference. It would seem, therefore, that to permit or suffer implies no affirmative act,—involves no intent. It is mere passivity, indifference, abstaining from preventive action. The distinction between procuring a thing to be done and suffering it was drawn in Gore v. Lloyd, 12 Mees. & W. 497, where, in considering the English bankruptcy law, it was said:

"The act of parliament speaks of two different classes of acts of bankruptcy. One is by the party's suffering, the other by his procuring, certain acts to be done. Surely this is only suffering. It cannot be procuring, because a person's procuring his goods to be taken in execution means that the initiative comes from him. He is the person who begins to procure, who initiates the proceedings, and causes the thing to be done, in the ordinary sense of the word. We should make no distinction between a party's suffering and procuring, if we were to say that the doing of an act of this kind was procuring. It can be nothing more than suffering."

In considering decisions involving the construction of analogous questions under the bankrupt act of 1867, due regard must be given to the material difference between that act and the present one. In the former the intent of both debtor and creditor were made express elements and conditions. Such intent fixed the character of the act of preference. By section 35 of that act, relating to liens, it was provided:

"That if any person being insolvent * * * within four months * * * with a view to give a preference to any creditor * * * procures any part of his property to be * * * seized on execution * * * the same shall be void."

By section 39, relating to acts of bankruptcy:

"That any person who * * * shall procure or suffer his property to be taken on legal process, with intent to give a preference to one or more of his creditors * * * or with the intent by such disposition of his property, to defeat or delay the operation of this act," etc.

In Wilson v. Bank, 17 Wall. 483, 21 L. Ed. 727, it was held that these provisions made the act of bankruptcy and the invalidity of the lien "to depend on the intent with which the act was done by the bankrupt, and the knowledge of the bankrupt's insolvent condition by the other party to the transaction." The court say:

"In both cases it must be accompanied by an intent. In section 35 it is to give a preference to a creditor. In section 39 it must be to give a preference to a creditor, or to defeat or delay the operation of the bankrupt act. In both there must be the positive purpose of doing an act prohibited by that statute, and the thing described must be done in the promotion of that unlawful purpose."

Moreover, in Clark v. Iselin, 21 Wall. 376, 22 L. Ed. 573, it was further said by the supreme court of the United States:

"The preference must be accompanied by a fraudulent intent, and it is that intent that taints the transaction."

Presumably with knowledge of these decisions, congress enacted the present law. Not only does the particular subdivision now under consideration omit the element of the intent of either creditor or debtor, but that such omission was purposeful and significant is evidenced by the fact that in the acts of bankruptcy defined by the two preceding subdivisions an intent to hinder, delay, or defraud creditors in the one, and to prefer a creditor in the other, is expressly required. It is clear that, by the purposeful omission of the element of intent in this class, congress has made facts, and not intent, the test of this particular act of bankruptcy. Such facts are insolvency of the debtor, preference through legal proceedings, nonvacation or discharge of such preference five days before sale, etc. This view has the support of authority. In Manufacturing Co. v. Stoever, 38 C. C. A. 200, 97 Fed. 330, this section was considered by the circuit court of appeals of the First circuit with reference to the four-months limit from the act of bankruptcy within which insolvency petitions must be filed. It was there said:

"Regard, however, must be had to the whole of clause 3; and, in view of that, what the appellant 'suffered or permitted' was the sale of its property through legal proceedings. This was clearly the true act of bankruptcy, within the contemplation of the statute, although the statute is somewhat awkwardly expressed. In like manner, as the failure to vacate the execution before the sale was the act of bankruptcy, it is clear the four-months period runs, not from the attachment, but from a date connected with the proceedings after the attachment."

To this may be added In re Moyer, 1 Am. Bankr. Rep. 577 (D. C.) 93 Fed. 188; In re Reichman, 1 Am. Bankr. Rep. 17, 91 Fed. 624. Nor is the case In re Nelson (D. C.) 98 Fed. 76, 1 Am. Bankr. Rep. 63, to the contrary, when its facts are examined. In it no execution had issued. There was no threatened sale. The alleged bankrupt had not, and could not have, failed in the statutory requirement of vacating or discharging the preference five days before the sale.

In conclusion, we may say, if judicial construction shall inject into this subdivision the element of intent which congress must have purposely left out,—if it shall require the element of active participation and positive acts on the debtor's part, when congress has said the negative, nonactive passiveness of the debtor is the test,—then assuredly courts, rather than congress, will in fact enact a bankrupt law. Moreover, if such be the construction, the practical result would be that an insolvent debtor has it in his power, by masterly inactivity,—by abstaining from filing a voluntary petition,—to prefer his favored creditors, and, as a practical result, to permit a sale of his property within a few days, and its purchase by such creditors at a sacrifice price.

We are of opinion the liens of these executions are invalid, and the case is one for an adjudication. Let a decree of adjudication be drawn, and the fund in question be paid to the trustee when chosen.