In re POLLMANN.

(District Court, S. D. New York. October 3, 1907.)

BANKRUPTCY—PROVABLE DEBTS—SURRENDER OF PREFERENCE.

A lien obtained by a foreign creditor of a bankrupt within four months prior to the bankruptcy, and while the bankrupt was solvent, on property of the debtor in a foreign country through judicial proceedings in the nature of an attachment, which were not opposed, is one sought and permitted in fraud of the provisions of the act within the meaning of Bankr. Act July 1, 1898, c. 541, § 67c(3) 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], and, where the creditor realizes therefrom payment of a portion of his debt, he is not entitled to prove the remainder as a claim against the estate in bankruptcy in this country without surrendering the amount so received so as to place him on equitable equality with other creditors.

In Bankruptcy. On petition for review of order made by Dexter, referee, disallowing in part the claim of Bruno Klemm.

The bankrupt was adjudicated in July, 1905, pursuant to an involuntary petition filed on the preceding January 20th. On November 3, 1904, Klemm, a creditor residing in Germany, obtained a lien against certain German real estate belonging to Pollmann. The exact nature of the lien in terms of American law does not clearly appear; but it is plain that said lien was not a mortgage or hypothecation existing prior to November 3, 1904, nor was it created on that date by any act of the bankrupt; but then originated in judicial process, and may be fairly described as of the general nature of an attachment. Subsequent to November 3, 1904, Klemm, through judicial proceedings, realized a considerable sum of money out of the attached realty. In October, 1906, the trustee herein began a suit in Germany to set aside said lien and reduce the real estate in question to his own possession. This effort was defeated by the German courts, for reasons not clearly ascertainable from the evidence. On November 3, 1904, Pollmann was solvent, so far as the evidence herein is concerned. After getting what he could from the German realty Klemm filed a claim in this court for the whole amount of his debt less the amount recovered in Germany. This claim has been denied unless he surrenders to the trustee the net proceeds of his German legal proceeding.

Dr. Paul C. Schnitzler, for creditor.
Julius Henry Cohen, for trustee.

HOUGH, District Judge. Inasmuch as there is no evidence of insolvency on Pollmann's part in November, 1904, the referee has based his finding entirely on section 67c(3), Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], holding that the German proce-

dure was of the nature of "an attachment upon mesne process," that it was begun "within four months before the filing of a petition in bankruptcy" against Pollmann, and that such lien (i. e., attachment) "was sought and permitted in fraud of the provisions of this act."

In the able opinion filed by the referee I concur. If the procedure above outlined had taken place, as it well might, in the United States, it cannot be doubted that the successful attaching creditor would have been obliged to refund the proceeds of his attachment. The phrase "in fraud of the provisions of this act" is identical with that in the act of 1867, and refers to any proceedings disturbing the equitable distribution of the debtor's estate (Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481); and the word "permit" does not require any active participation in the process of transfer through legal proceedings. Mere passivity on the part of the debtor is sufficient. The same word ("permitted") is used in section 3a(3), and has been frequently so construed. It is enough that the creditor is active and the debtor permits that activity to be unopposed. In re Thomas, 4 Am. Bankr. Rep. 573, 103 Fed. 272; Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147. The fact that the lien was obtained in a foreign country can make no difference in the meaning of the phrase "in the fraud of the provisions of this act." That expression does not necessarily mean active fraud or illegality, but intent to prevent equitable distribution of the debtor's property, and where that intent obtains is immaterial.

But, further, the decision is in my opinion right upon broad equitable grounds. It may well have been that the trustee acquired no title whatever to the German realty. Oakey v. Bennett, 11 How. 33, 13 L. Ed. 593. But this proves no more than that Klemm was entitled to enjoy in Germany the fruits of his German legal proceeding. The bankruptcy act (section 65e) declares that no claimant shall be entitled "to collect from a bankrupt estate any greater amount than shall accrue, pursuant to the provisions of this act." This section does not relate merely to dividends. A claimant who comes into the bankruptcy court must get what he gets pursuant to the provisions of the bankruptcy statute, and, if he be permitted in any way to "collect" any where, or any how, more than the statute regards as equitable, this section is useless.

Again, the court in bankruptcy is by elementary rule a court of equity, possessed of full equitable powers within the limitations of the statute, and bound to exercise them in furtherance of the statutory object. In this way the English statutes have been construed from early times. In Selkrig v. Davis, 2 Rose, 291, a Scottish creditor had exercised upon the Scotch property of an English bankrupt much the same legal remedies as Klemm invoked in Germany, and Lord Eldon held that, if he chose to come into an English court, he should be treated as an English debtor who had obtained a preferential advantage, and dealt with as such. In Banco de Portugal v. Waddell, 5 App. Cas. 161, the claimant had reaped some advantage from a Portuguese proceeding of the nature of a general assignment (cessio bonorum) before propounding his unpaid balance as a provable claim in an English court. He was treated in much the same way as has been this petitioner, and the case decided on the ground that he who seeks equity

must do equity. In Re Somes, 3 Manson, 131, it is held for settled law that "one who by legal proceedings in a foreign country obtains part of his claim cannot come into an English court of bankruptcy and prove for the balance without bringing into hotch pot what he obtained abroad," unless he have a lien antedating the date fixed by the bankruptcy statute for the equalization of claims. These decisions are applicable to our procedure; and, in the present condition of international business, every reason exists for their full application. If Klemm, a resident of Germany, may enjoy in the United States the advantages of legal proceedings valid in Germany, such advantage cannot logically be confined to foreigners; for the advantage asserted does not depend upon the person of the creditor, but upon the law of the situs of the property, and American creditors of American bankrupts might be actuated by early suspicion to attach their debtors' foreign estates, and enjoy the proceeds of such legal proceedings, to the destruction of equality.

I think the form of the referee's order would more properly have been that Klemm be denied any dividend until what time all other creditors had received the same proportion of their claims as Klemm has obtained in Germany; but the result is the same, and the order under review is affirmed.