**GUARANTY TRUST CO. OF NEW YORK v. BROADWAY & SEVENTH AVE. R. CO. et al.**

District Court, S. D. New York.
Aug. 22, 1930.

Carter; Ledyard & Milburn, of New York City (Edwin De T. Bechtel, of New York City, of counsel), for petitioner Chatham & Phoenix Nat. Bank & Trust Co.

Cotton, Franklin, Wright & Gordon, of New York City (J. A. Fowler, Jr., of New York City, of counsel), for Hugh J. Sheeran.

Patterson, Eagle, Greenough & Day, of New York City (William Greenough, of New York City, of counsel), for Broadway & Seventh Ave. R. Co. consolidated mortgage bondholders' protective committee.

Joseph Gans, of New York City (Samuel Schacter, of New York City, of counsel), for Madison Inv. Co.

WOOLSEY, District Judge.

This petition is granted and the injunction prayed for may issue for the period hereinafter indicated, and I shall not require any bond from the petitioner as a condition to the issuance of this injunction.

I. The jurisdiction of this court in this suit between two corporations of New York state is founded on the fact—alleged in paragraph 7 of the complaint herein—that it is a bill ancillary to a suit, pending in this court when this suit was filed, between the American Brake Shoe & Foundry Company, a corporation of the state of Delaware, and the New York Railway Company, a corporation of New York. Equity Docket No. 17—89.

II. Under an order made and entered herein on September 30, 1919, Job E. Hedges was appointed receiver in this case "of all the property and assets of the said defendant (Broadway and Seventh Avenue Railroad

Company) real, personal and mixed, of whatsoever kind and description and wheresoever situated."

By an order made and entered on July 9, 1924, the resignation of Job E. Hedges, as receiver, was accepted and Hugh J. Sheeran was appointed in his place and stead as receiver of the same properties. This receivership still continues.

III. On the 31st day of May, 1923, a final decree was entered foreclosing the first mortgage, dated June 1, 1883, of the Broadway & Seventh Avenue Railroad Company.

It was provided, inter alia, in that decree that, unless the defendant Broadway & Seventh Avenue Railroad Company, hereinafter called the railroad, or some one in its behalf, should within ten days from the entry of the decree pay certain sums of money to the Guaranty Trust Company of New York, as trustee, for the use and benefit of holders of bonds secured by the mortgage of June 1, 1883, the mortgaged premises, property, and franchises of the Broadway & Seventh Avenue Railroad Company should be sold.

A special master was appointed to make this sale. His instructions were set forth in the decree, and it was ordered that all moneys resulting from the sale, after the payment of administration expenses and the discharge of taxes, should be devoted to the payment of the principal and interest due on the said mortgage of June 1, 1883.

The decree also provided in article XII for a deficiency judgment as follows:

"That in case the proceeds of the sale of the property described in this decree shall not be sufficient, when applied in accordance with the provisions of this decree, to pay in full the amount due and unpaid upon the said bonds secured by the Mortgage dated June 1, 1883, together with interest thereon from the date of this decree to the date of payment, then the Special Master shall report to this Court the amount of any such deficiency, and said Guaranty Trust Company of New York, as trustee, shall have judgment against the defendant, The Broadway and Seventh Avenue Railroad Company, for the amount of any such deficiency, and shall have execution therefor pursuant to the rules and practice of this court."

Article XV of the decree thus provided for the extension of the term in order to keep the decree alive:

"That any purchaser of the property described in this decree or of any parcel thereof shall have the right to enter his appearance in this cause.

"All matters not by this decree determined are reserved by this Court for future determination, including all details of sale not hereinbefore set forth.

"That any party or parties to this cause, his, its or their successors and assigns, may at any time apply to this Court for further relief at the foot of this decree, and this Court reserves jurisdiction to determine all issues of law and fact raised under any such intervening petitions, or under any already existing petition or pleading or to enforce such determination with like effect as if such adjudication had been had prior to the entry of this decree. The present term of this Court is extended until after the complete execution of the provisions of this decree, and until after the final disposition of all matters therein reserved for future determination or action by this Court and in any event for three years from the date hereof, with leave to any party to the above entitled cause, at any time prior to the expiration of said period of three years to apply to this Court for a further extension of said three years." .

IV. An appeal was taken from this decree by several of the defendants, among them the Metropolitan Trust Company of New York, the predecessor trustee of the petitioner, Chatham & Phoenix National Bank & Trust Company, hereinafter referred to as the Chatham Bank.

During the pendency of this appeal certain modifications of the decree were agreed to and afterwards effectuated by orders of this court, of which the details are irrelevant here, but which were made and entered in pursuance of the retention of jurisdiction contained in article XV just quoted. Thereupon the appeals were withdrawn.

Thus, the suit was not settled as counsel opposing this petition claims. The appeals only were disposed of; the suit remains alive. For with the modifications above referred to the decree of foreclosure herein made is now outstanding unexecuted, and, by article XV thereof, the term in which it was entered is still extended until its execution is completed.

There has not been any sale of the premises, but all the first mortgage bonds of the first mortgage of June 1, 1883, to foreclose which this proceeding was brought, are now owned by and in the hands of the Chatham Bank, by merger the alter ego of, and, consequently, the successor trustee to the Metropolitan Trust Company, as trustee of the first consolidated mortgage of December 22, 1893.

■ V. This suit, therefore, has become a part of the security of the bondholders under the first consolidated mortgage, and this decree of May 31, 1923, herein, is a substantial asset to the Chatham Bank, as trustee of the said mortgage.

The decree is held by the Chatham Bank, in effect, poised over the whole situation, and available for such use as the Chatham Bank may consider to be of advantage to its bondholder cestuis in order to preserve and liquidate their security under the first consolidated mortgage.

Consequently, far from being a stranger to this proceeding, as the attorney for the party opposing this petition contends, the petitioner, Chatham Bank, is the cestui of the Guaranty Trust Company, the plaintiff herein, and as such is, in equity, the actual dominus litis.

This, therefore, gives to the Chatham Bank a standing herein to maintain the petition under consideration, which by the provisions of article XV of the decree falls directly within the reserved jurisdiction of this court.

VI. The status of the railroad is that of a party defendant to this suit, which the court by appointment of a receiver has denuded of all its property.

■ The appointment of a receiver in an action to foreclose a mortgage of this kind is not an unusual procedure, and is highly in the interest of bondholders. It prevents execution by others against the property thus impounded, and enables the provisions of the decree for a deficiency judgment to be effectual, as far as may be.

■ After the mortgage debt and any deficiency judgment rendered is paid, if there remains property which can be returned to the railroad by this court, it will be returned to it.

■ It seems to me quite obvious that when a company, under circumstances such as these, has all its property taken away from it by a receiver appointed by this court, this court must protect it from litigations outside of the proceeding here pending. For a company in this situation, by reason of the fact that its property and funds have been taken from it, is not in a position adequately to resist any claims brought against it.

VII. On or about June 30, 1930, an action was commenced in the municipal court of the city of New York, borough of Brooklyn, Second district, by the Madison Investment Company, Inc., against the railroad to recover the sum of $900, with interest from June 1, 1930, due on certain coupons detached from bonds of the first consolidated mortgage of the railroad, of which the numbers are listed in a schedule annexed to the complaint, and which are alleged to have come lawfully into the possession of the plaintiff who now claims to be the lawful owner of them.

The petition here under consideration is brought to enjoin and restrain the Madison Investment Company, Inc., from prosecuting this municipal court action further, and thus prevent it from obtaining a judgment against the railroad for the amounts due on the coupons involved in that action.

VIII. If all defaulted bonds and coupons under the first consolidated mortgage were allowed to be reduced to judgment, there would be upwards of $5,000,000 of judgments entered against the railroad.

The Chatham Bank, as trustee of the first consolidated mortgage, asks this court to prevent such a situation and to give it an opportunity to work out through this still unexecuted decree, and through such other proceedings as it may be advised to bring, a liquidation of the various securities underlying the first consolidated mortgage for the benefit of all the bondholders under that mortgage, including the Madison Investment Company, Inc., the recalcitrant plaintiff in the municipal court proceeding above mentioned.

IX. Although on first impression this petition may seem to involve an extraordinary request to this court, that appearance is largely owing to the unusual procedural mechanism on which it is founded and through which its result is sought. In essence the request is reasonable and the situation in effect is simple:

A, holding a claim against B and his property, as trustee, for the benefit, as cestui, of a class of persons to which C belongs, asks that C be restrained from enforcing any part of his claim against B to the probable detriment of the other cestuis, for all of whom A is seeking to get payment from B and whom A in the discharge of its fiduciary duties is bound equally to protect.

The fact that C may have a legal claim against B does not complicate the equities, for all that is here asked is to make C wait to enforce his legal claim, if any, until A, as trustee, has finished his job as trustee. C is not asked to surrender his legal claim.

■ The Chatham Bank, as trustee, is fortunate enough here to have a procedural set up

134

which enables it to ask for a protective injunction, savoring, as hereinafter shown, of a mild form of contempt proceeding, instead of having to start a new and independent suit. For courts are zealous to protect their proceedings from all outside interference, and, consequently, in view of the situation here, I find myself hospitably inclined to the prayer of the petition.

X. I find an authority in this district which seems to recognize the principle which sustains my position in granting the injunction sought for in this petition. That is the case of Beaver Board Cos. v. Imbrie (D. C.) 275 F. 437, in which Judge Manton refused to allow individual members of a banking firm then in receivership to be sued as individual defendants on the ground that the receiver was entitled to proceed against the individual partners to satisfy the claims of creditors of the firm, and that actions against such individual partners by an outsider would hinder the receiver in his effort to secure all assets available to the firm's creditors and distribute such assets equally among them.

Judge Manton pointed out that refusing to permit the petitioner in that case to commence actions against the individual partners whilst the receivership was still pending would not prevent him, after the receivership ended, from recovering against such individual partners if it was shown that he was entitled to do so. 275 F. at page 438.

At most, therefore, the injunction I am granting is merely a moratorium so far as the Madison Investment Company, Inc., is concerned, and it has no just ground for complaint thereat because it cannot be allowed to interfere with the orderly processes of this court, even when these processes seem to it to have been, to put it more mildly than counsel did, somewhat sedate.

It must be remembered, however, that there has not been any substantial delay on the part of the Chatham Bank, for there was not any default on the first consolidated mortgage till June 1, 1930, and, consequently, no proceedings could have been taken thereunder by the Chatham Bank, as trustee, until after that time. Since then, I am advised, a voluntary committee of bondholders has been formed and some concerted action on behalf of the bondholders under that mortgage is imminent.

■ XI. On an application for a protective injunction, the court must consider what future complications and conflicts of jurisdiction are reasonably expectable. One such occurs to me, and I mention it without expressing any opinion on its merits. It is this: If a judgment were secured now in the municipal court action above mentioned, it undoubtedly would be claimed to be entitled to priority over any deficiency judgment which might be granted by this court in this case as against any unmortgaged property of the railroad.

If this contention should be sustained, the Madison Investment Company, Inc., would secure an unwarranted preference over other consolidated mortgage bondholders in the assets of the railroad, if any, which were not covered by the lien of the first mortgage, but which otherwise might be subject to any deficiency judgment thereunder. But whatever the result might be, the possibility of such a controversy in this suit should be prevented. For when the federal court has, as here, already impounded the property and assets of a company, as contingent security for a possible deficiency judgment on a mortgage, I do not think that any other judgment should be allowed to go against the defendant until the proceeding in the federal court has been completed and the deficiency judgment, if any, has been satisfied out of the property and assets of the company in the hands of the receiver.

■ XII. I am urged by the Madison Investment Company, Inc., that I should not grant the injunction prayed for unless I insist on security being given by the petitioner. I have already twice ruled that this is not necessary, but perhaps I should develop the reasons for my decision on this point.

I think that the situation as to this contention in the case of a protective injunction of this kind has perhaps been best stated in the case of Swift v. Black Panther Oil & Gas Co., 244 F. 20 (C. C. A. 8). That case involved the question of staying the execution of a state court judgment against assets in the hands of a receiver in a federal equity proceeding, and not, as here, the question of enjoining a state court suit prior to judgment.

The principle is, however, the same so far as the granting of such relief in the federal court is concerned, provided it is found, as I have found here, that the protection of the situation in the federal court requires an injunction against proceeding to judgment in the state court.

In holding that it was not necessary as a condition precedent to the granting of such an injunction that security should be given by the party seeking the injunction, Judge

Sanborn, who was one of our greatest equity judges, said, 244 F. at page 29:

"Finally, it is insisted that the decree for the injunction should be reversed, because section 18 of the act of October 15, 1914, entitled 'An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes,' provides:

" 'That, except as otherwise provided in section 16 of this act, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby.' 38 Stat. 738, c. 323 (Comp. St. 1916, § 1243b [28 USCA § 382]).

"And the court below ordered and issued its injunction without compelling the Panther to give any bond, although counsel for Mr. Swift moved the court to require it.

"But the restraining order and injunction in this case were issued by the court below, in lieu of proceedings for contempt of that court, to prevent the impairment and defeat of the just exercise of its undoubted jurisdiction to protect and enforce its lawful orders and to preserve the title made by it under them. The unlawful interference of Mr. Swift with the enforcement of the just orders and the preservation of the lawful titles made by the court below was a contempt of that court, and, if continued, might well have been punished as such. The issue of the injunction was but a milder method of protecting its jurisdiction, orders, and titles from unlawful impairment. There is nothing in section 18 to indicate, and, until that intention is clearly expressed, it cannot be presumed that the Congress intended thereby to limit or condition in any way the power of the federal court by means of its injunction, any more than by means of proceedings for contempt, to preserve and protect its jurisdiction, acts or titles from unlawful impairment or destruction. Section 18, Act Oct. 15, 1914 is, like section 720 of the Revised Statutes, now section 265 of the Judicial Code [28 USCA § 379] inapplicable to injunctions of the federal courts issued for this purpose. Moreover, Mr. Swift has sustained no loss or injury from the absence of the bond, for the condition of it would have been to pay such costs and damages as he would have suffered if he should be found to have been wrongfully enjoined or restrained, and he is found to have

been rightfully enjoined and restrained. If now this court were to reverse the order and decree for the injunction, that act would be a futile one, for, in view of the opinions of the court below and of this court, the former would undoubtedly immediately issue another like injunction. The order and decree for the injunction are not reversible, because no bond was taken."

XIII. For the reasons above stated I hold:

1. That the Chatham Bank has, in my opinion, for the reasons above given, an equitable status in this suit which enables it to maintain this petition and ask the court for the protective injunction sought, and

2. That, having jurisdiction and power to issue such an injunction, I should do so as a protection to this suit in order to prevent impairment of the jurisdiction and acts of this court, and to preserve from interference any titles which may be made under its orders herein.

The injunction must contain the provision that it shall last only until this suit and the receivership of the property of the railroad granted herein shall have been terminated.

Settle order on two days' notice.