## FAIRBANKS, MORSE & CO. v. TEXAS ELECTRIC SERVICE CO.*
### No. 6595.

Circuit Court of Appeals, Fifth Circuit.

Feb. 25, 1933.

*Rehearing denied April 21, 1933.

See, also, 36 F.(2d) 831.

Allen Wight, of Dallas, Tex., for appellant.

R. K. Hanger, of Fort Worth, Tex., Charles L. Black, of Austin, Tex., and Joe A. Worsham, of Dallas, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

From a decree granting an omnibus injunction as to the sixty-five communities in Texas which plaintiff, a public utility, serves, restraining the defendant from inducing or causing others to induce breaches of the contracts which plaintiff has, since this cause was here before, 32 F.(2d) 696, obtained from its customers, defendant appeals.

The suit as originally brought represented a step in the struggle which then focused in the towns of Seymour and Commerce, had been for some time going on, in which defendant, in the interest of selling its machinery, was trying to institute effective municipal competition in those communities, and plaintiff, in the interest of maintaining the monopoly it had, was trying to prevent it.

On the former appeals, Fairbanks, Morse & Co. v. Texas Power & Light Co. (C. C. A.) 32 F.(2d) 693 and Id., (C. C. A.) 32 F.(2d) 696, we affirmed the undoubted right of cities and towns to build municipal plants, and of defendant to freely contract with and sell to them, and denied plaintiff's right to in any manner prevent such dealings. Cf. West Texas Utilities Co. v. City of Spur (C. C. A.) 38 F.(2d) 466, 469. Of the contracts with its customers which plaintiff then claimed protection for, we said that, since it appeared from the record that they were about to expire, it did not appear that defendant, in preparing to solicit them for the city plants, was infringing plaintiff's rights.

The bill on which this injunction was granted was filed over the objection of defendant that it stated a new cause of action, as an amendment to the former petition for the purpose of declaring on the long-time contracts it had gone about to secure after this court had held that, because no substantial contract rights were shown on the old bill, no ground for injunction existed. This amendment set up that plaintiff has obtained written requirement contracts of from two to five years' duration from 90 per cent. of the users of electricity in every community it serves; that defendant knows this to be so, but, notwithstanding, it is now engaged in carrying on a plan to sell on credit to and install in those communities municipal light and power plants, the necessary purpose and effect of which plan, because of plaintiff's contracts with practically all of the users there, is to induce plaintiff's customers to breach their contracts with it in order to become contract customers of the municipal plants to be erected by defend-

ant; that particularly is this so because defendant, looking under its agreement entirely to the revenues of the plant for its pay, must have assurances before it agrees to build, that at least 70 per cent. of the electric users in the community will make exclusive three-year contracts with the municipal plant.

The defendant, denying that it ever did request or would request cities and towns to induce persons to breach their contracts with plaintiff, admits that its plan of selling is substantially as alleged, that is, it sells on credit agreeing to take its pay out of the revenues of the plant, and that, for the purpose of assuring itself that it may reasonably expect its outlays to be returned from those revenues, it does require a customer canvass to be made and assurances to be given of the business which the plant, if erected, may expect to have. It admits that it does endeavor to make thorough surveys of the different communities to determine the markets there for the sale of municipal light and power plants, and whether it can safely erect plants. It admits also that it intends to continue to follow the same plan of business in future, and in the course of it to insist upon having each town which it proposes to contract with obtain evidence by circulating exclusive contracts, among the users of electricity there or otherwise, that enough permanent customers may be secured to make the plant a success. No proof was offered showing or tending to show that the breach of a single one of the contracts on which plaintiff now relies has been caused by defendant or by its procurement, or that it has set on foot or caused others to set on foot solicitations to breach them. It is, however, shown that plaintiff has contracts with upwards of 90 per cent. of the users of electricity in the communities it serves, thus giving it, if its customers cannot be solicited, a practical monopoly of the business, with the result that, since defendant's plan requires towns with which it contracts to furnish assurances of patronage from at least 70 per cent. of such users, it follows that no municipal plant can exist or operate unless some at least of plaintiff's customers can be induced to breach.

The proof also shows (whether on plaintiff's or defendant's initiative is not clear) that negotiations were on foot between Carpenter, plaintiff's president, and Bolton, defendant's manager, looking to suppressing and doing away with the competition which defendant's activities in pressing for mu-

nicipal business was forcing on plaintiff. In these negotiations it was stated that plaintiff had taken away so much of defendant's regular business by distributing power to gins, waterworks, etc., that defendant would be compelled to press its case to get municipal business, and that, unless plaintiff would make purchases to the amount of several hundred thousand dollars, the competition would continue. It was proven that these efforts of defendant to set up municipal plants in competition was causing bad feeling and resulting in injury and damage to plaintiff.

The contracts attached to plaintiff's bill and offered in evidence are on their face merely applications for service in which the applicant, without agreeing to take any particular amount, agrees to pay the company for the service which it furnishes. These applications do not on their face or by the agreement printed on the reverse, bind domestic customers to take any particular amount of current, or the company to furnish them any particular amount. The power customers are, however, bound by the agreement they sign to take for the period of the contract the extent of their full requirement of power. These contracts provide as to both domestic and power customers, that the customer will not resell to any person any part of the energy furnished him under the contract.

Defendant offered no evidence. The court found that the plaintiff's contracts were valid, that the actions of the defendant were intended to cause and would cause their breach, and that plaintiff was entitled to an injunction, qualified, however, so as not to restrain defendant from trying to sell its plants, or from going to domestic users to induce them to take contracts, if after inquiry it was found that they had no contracts with plaintiff. The injunction was in effect that defendant be enjoined from inducing the customers of plaintiff with whom it has contracts that had not terminated, to breach them, and from soliciting or causing others to solicit, by requests or in contracts or agreements, contract customers of plaintiff to sign new contracts binding the customer to take from another the same service which they had agreed to take from plaintiff.

Appellant urges here that the decree should be reversed (1) because there was no evidence that the defendant had breached or induced the breach of, or was endeavoring to induce the breach of, any of the contracts plaintiff has; that the injunction was a mere wholesale warning order, which a court of equity could not issue; (2) that, if the proof did show as to the town of Seymour, or any other community served by plaintiff, that defendant's activities would be directed to, or would necessarily cause the breach of the contracts which plaintiff has secured, the evidence showed no valid contracts to be breached; that they were either unilateral and unenforceable because they contained no binding agreement to take any particular amount, or they were invalid as in restraint of trade, because binding the parties neither to buy from nor sell to any other person; that, if therefore appellant's activities did cause their breach, plaintiff would have no action, as defendant would be justified by the public policy of the state condemning such restraints; that it appeared without dispute that plaintiff's plan to get long-time contracts, set on foot after the opinion in the former appeal had come down, to meet what it thought the grounds of that opinion, had resulted in binding to deal with it alone such a great part of the citizens of the municipalities in which they enjoyed a monopoly as that if legal and binding they made it impossible for a community to erect and construct a municipal plant of its own; that such activities looking to and resulting in forestalling effective municipal competition were and are in restraint of trade and invalid as contrary to the statutes of this state, and the public policy which they manifest; (3) that, if they are not invalid on their face, under the proof in this case they are of such doubtful character as that a court of equity ought to withhold its hand from making a decree by wholesale, as this one was, which could have only one effect, of restraining the defendant and the municipalities with which it desired to do business from proceeding openly and as of right to canvass with their citizens the wisdom and propriety of their building and patronizing a municipal plant; that, if any particular contracts of plaintiff are valid and are in future breached, plaintiff must look for its damages to its action at law; in short, that a court of equity will not issue an injunction of this kind having the necessary result of hampering and interfering with the right of the public, through its municipal officers, to institute and maintain municipal power and light plants; for that the public wrong of inducing a breach of contract is far overset by the public wrong, of preventing municipal competition which plaintiff's activities, if sanctioned by injunction, will necessarily

effect. It argues that cities have, in the interest of the public, the same right to induce their citizens to take service from a municipal plant rather than from the plant of a private utility corporation as they have to institute new rates below the contract which plaintiff and its customers have agreed upon.

■■ We think it perfectly clear that these positions are well taken. It must be conceded that, generally speaking, it is tortious for one without justification to induce another to breach a contract, and that it is quite generally assumed almost as a matter of course that an injunction will be granted when the breach of valid contracts is, without legal justification, being or about to be, induced. Pomeroy Equity Jurisprudence (2d Ed.) vol. 5, §§ 2019 to 2023, inc.; Nims, Unfair Competition, c. 12, §§ 162, 164, 167, 169, 170, 171. Such injunctive relief, however, is granted only in obedience to recognized equitable principles and upon clear and satisfactory proof that valid contracts are about to be breached, and no precedent has been, or we think may be, shown for a blanket injunction, an injunction by wholesale on evidence of the kind before us. Here, without proof at all of any of defendant's acts as to any specific community or contract, without any showing as to any particular community that defendant has entered or intends to enter it, has done or intends to do anything there, defendant is generally enjoined as to the whole state of Texas, and the sixty-five communities in which plaintiff operates. Because it is without evidence to support it, the decree may not stand.

■ Further, it may not stand for the more fundamental reason that it operates to sanction and perpetuate a monopoly which plaintiff may not, under the laws of Texas, enjoy. While it is well settled that valid contracts will be protected against unjustifiable interference with them, it is equally well settled that, where there is legal justification to do so, interference with business or even contract relations is not actionable. The right of the plaintiff in his business or his contract may be overmatched by the privilege of the defendant or considerations of the public welfare. Carpenter, Interference with Contract Relations, Harvard Law Review, vol. 41, p. 728 et seq.; Holmes, Privilege, Malice and Intent, Harvard Law Review, vol. 8, p. 9. Typical contracts, the enjoyment of which no court will move to insure and the breach of which no court will undertake to prevent, are those prohibited by statute, contrary to public policy, in restraint of trade, or monopolistic in their tendency or result.

■ The proof showed, as to these contracts and defendant's activities as to them, that all that the defendant was trying to do was to induce municipalities to buy from and permit it to install light and power plants, an entirely legitimate business, and that, as a part of that inducement, defendant would agree to look to the plant and its income alone as its security and for its pay; that necessarily in order to determine whether such a contract could be safely made the town must be canvassed to determine whether the support of a sufficient number of its citizens could be counted on. As plaintiff points out in its brief, this canvass must necessarily include customers of plaintiff, because, until a new plant was constructed, every user in the city must be plaintiff's customer. In addition, 90 per cent. of these users are bound to it by contracts either exclusive in terms or in operation. It must follow, then, if plaintiff's customers may not be solicited for business, that it has, by the device of securing time contracts, obtained for itself in effect what the public policy of the state forbids towns to grant to it, an exclusive franchise; that the effect of what it has done, if protected by an injunctive decree, is to permit it to establish and perpetuate a monopoly contrary to the genius of the state and its opposed statutes.

This is not a case of persons under valid contracts with a light company being maliciously induced to switch their business. It is a case of a planned and consummated monopoly established by a system of exclusive contracts, enlisting the aid of a court of equity to sanction and perpetuate it. It is fundamental that courts will not protect such contracts. The whole doctrine of interference with the business and contracts of another springs from, its foundation rests in, public policy. The true balancing of public interests has always been the recognized criterion which determines in each particular case whether the conduct is actionable. One having no business interests to serve may not induce a breach of business relations. Such inducement is in law regarded as wanton and malicious. One having business interests to serve may by every fair means, such as lowering prices, offering better service, showing better salesmanship, freely induce those not under fixed contract to become his customers. Here the interest of the public in pre-

serving free competition overbalances the public interest in protecting the individual in the business relations he has built up. This same principle of justification, though in narrower limits when business relations are cast in contract form, operates within those limits as strongly to make conduct non-actionable as it does in business relations not fixed by contract. It would be difficult to imagine a plainer case of justification for interference than the case made out here.

Whether the Supreme Court of Texas will follow its holding in Cox, Inc., v. Humble Oil Ref. Co., 16 S.W.(2d) 285, or that of the Court of Civil Appeals in Great Atlantic & Pac. Tea Co. v. Jones Inv. Co., 47 S. W.(2d) 362, is wholly beside the point here. Those were cases of individual contracts. If plaintiff having a few exclusive contracts, so few that they could not possibly result in a monopoly, were complaining here of the twisting of one or more of them away, it might well be that, even though exclusive in their terms, a reasonable construction of them would find them valid; that the public interest in protecting contracts would overbalance the public interest in according to those customers the right of freedom of contract with the municipality. This however, is a case of a system of contracts entered into for the purpose of producing the result now demanded, the establishment in each community plaintiff serves of a monopoly of the light business there. It is fundamental that such a system is invalid, not only in Texas, but elsewhere. Park & Sons Co. v. Hartman (C. C. A.) 153 F. 24, 25, 12 L. R. A. (N. S.) 135; U. S. v. Addyston Pipe & Steel Co. (C. C. A.) 85 F. 271, 46 L. R. A. 122; Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co. (C. C.) 171 F. 553. A stronger case of violation of the statutes of Texas prohibiting contracts in restraint of trade could not be stated. Article 7428, Rev. St. 1925 provides that a conspiracy in restraint of trade exists "where any two or more persons [etc.], who are engaged in buying or selling any article of merchandise, produce or any commodity enter into an agreement or understanding to refuse to buy from or sell to any person, firm, corporation or association of persons, any article of merchandise, produce or commodity" and article 7429 declares that "Conspiracies in restraint of trade, as herein defined, are prohibited and declared to be illegal."

To protect plaintiff's contracts by injunction in the face of these statutes would nullify the public policy of the state as enacted in its statutes and affirmed by its courts. Wood v. Texas Ice & Cold Storage Co. (Tex. Civ. App.) 171 S. W. 497; American Brewing Ass'n v. Woods (Tex. Com. App.) 215 S. W. 448.

The judgment is reversed, and the cause is remanded, with directions to dismiss the bill.

