### DETROIT TRUST CO. et al. v. CAMP-BELL RIVER TIMBER CO., Limited, et al.

#### No. 8721.

Circuit Court of Appeals, Ninth Circuit.
July 19, 1938.

As Modified on Denial of Rehearing
Sept. 12, 1938.

Stephen V. Carey, W. Z. Kerr, and Kerr, McCord & Carey, all of Seattle, Wash., for appellants.

H. B. Jones and Robert E. Bronson, both of Seattle, Wash., for appellees.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Questions concerning the extent of the power of a bankruptcy court to issue injunctions, the sufficiency of an injunction bond and of the good faith of the debtor, have been raised by an appeal from three orders made in a corporate reorganization proceeding.

Appellee, Campbell River Timber Company, Limited, a Washington corporation, hereinafter called the company, was organized in 1926, for the purpose of acquiring and logging timber on Vancouver Island in British Columbia. It thereafter acquired about 27,504 acres of timber, and to obtain working capital, it executed a deed of trust on January 3, 1927, covering such timber to appellant, Detroit Trust Company, a Michigan corporation, as trustee, as security for the company's 6% first mortgage gold bonds. Bonds in the total sum of $1,663,000 were issued. A portion of the bonds matured on January 1st of each year beginning January 1, 1932, the last portion maturing on January 1, 1941.

Supplemental indentures to the trust agreement were made on May 23, 1929, and on September 17, 1931. The company defaulted in the performance of some of its obligations and covenants, and as a result of negotiations between it, the trustee and the bondholders an agreement was reached. The agreement made many concessions to the company by modification of the trust indenture. As consideration for such concessions, the company agreed to perform the provisions of the trust indenture as amended, and upon default by it and demand of the trustee forthwith permit the trustee to take possession of the property and confess judgment in a mortgage foreclosure suit. At the same time, the company executed a power of attorney au-

thorizing one McCamant to confess such judgment.

There was enacted on March 29, 1934, in the Province of British Columbia the Mortgagors' and Purchasers' Relief Act, 1934. It was amended on March 23, 1935 and April 1, 1936. In general it prohibited foreclosure proceedings to be commenced or continued without "leave of a Judge granted upon application". Prior to the making of the application to the judge a preliminary inquiry was required to be held by the "Registrar of the Court" who was required to report his findings and recommendations to the Judge. Thereafter on application the Judge might "in his absolute discretion, after considering the report, by order postpone the exercise of any right or remedy".

On July 1, 1937, the company again defaulted. Negotiations for adjustments were again had, with no result. Demand by appellant Hill, a representative of the trustee, that the company convey the property to the trustee, was refused by the company. Thereupon, the trustee made application for a preliminary inquiry by the Registrar of the Supreme Court of British Columbia, and date for the hearing was fixed for November 18, 1937.

On November 15, 1937, the company filed in the court below its petition to reorganize under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The petition alleged that of the 50,000 shares of no par value, of authorized capital stock, 27,583.75 shares had been issued for $2,292,957.50. A balance statement as of September 30, 1937, was attached to the petition. It showed total assets of $2,153,753.07, and total liabilities (including $663,500.00 of bonds, but excluding capital stock in the sum of $1,036,700.63) of $1,117,052.44. Thus the bonds were approximately half of its total liabilities other than capital stock. The petition contained the usual allegation that debtor was not insolvent but because of "present economic conditions * * * its financial status and lack of necessary working capital * * * it is unable to meet its debts as they mature, and it, therefore, desires to effect a plan of reorganization". On the same day the court below "being satisfied that such petition complies with the provisions of said section 77B, and has been filed in good faith", by order, approved the petition "as properly filed" and continued the company in possession of its property until a hearing to be held on December 13, 1937.

On the same day, on motion of the company, the court made a temporary restraining order, restraining the trustee, Hill, and all their agents and attorneys, from commencing or prosecuting any proceeding against the company, and ordering the trustee and Hill to appear on November 22, 1937 and show cause why the restraining order should not be made permanent.

On November 18, 1937, the preliminary inquiry in British Columbia was held. An objection of the company that the Registrar should not proceed because of the restraining order, was not sustained, the Registrar saying that his power extended only to an inquiry as to the intended application, and any objection to the application when made should be addressed to the Judge. On the following day, the Registrar recommended that foreclosure be permitted.

The trustee and Hill, having entered an appearance on November 22, 1937, pursuant to the show cause order, the court below set the same for hearing on November 27, 1937. On that day, the trustee moved to dismiss the proceeding on two grounds: (1) That the property was without the jurisdiction of the court, and (2) that the proceeding had not been instituted by the company in good faith.

At the hearing on November 27, 1937, affidavits were submitted. It appeared that at the time the petition under § 77B of the Bankruptcy Act was filed, the current assets were $241,526.26, and the current liabilities were $149,785.12. The operating statement for the year 1936, prepared as required by the trust indenture showed a net loss of $24,103.78. The company had total sales of $1,329,552.05. There was some evidence that "there is a charge of $71,352.75 on account of shortage between the timber cut during the year and the estimated quantity recorded in the cruise at the commencement of operations". Had that charge been eliminated, the statement would have shown a profit in the sum of $47,248.97.

A committee of five men, representing the bondholders, made a report to the bondholders on August 26, 1937. It was reported that three men on the committee (one being appellant Hill) visited the property in June, 1936, and reported "that the operation was well laid out and exceptionally well equipped, and that the local management, as well as they could judge during their brief visit, was capable and efficient" and that "they expressed every confidence

that the Company's bonded indebtedness could and would be paid in full from the liquidation of the remaining timber and that, in addition, the Company's stockholders eventually would realize a substantial equity". Hill had also testified at the preliminary inquiry that he had no doubt that if the company were allowed to carry on, the bondholders would eventually be paid.

At the conclusion of the hearing the court below found that the company's petition had been filed in good faith; it held that it had the "power to restrain the doing, or to require the doing of acts on the part of persons subject to its court orders no matter where the acts may be expected to be done", and that the restraining order should be continued. On November 29, 1937, the court made an order overruling the motion to dismiss filed by the trustee. It made another order enjoining the trustee and Hill from commencing or prosecuting any proceeding against the company or its property, and that the company file a bond in the sum of $5,000 "conditioned for the payment of such costs or damages as may be incurred or suffered by any party who may be found to be wrongfully enjoined and restrained". Finally, on the same day it made an order referring the proceeding to a special master. The trustee and Hill have appealed from the three orders so made.

Neither party has cited nor relied upon, nor has our attention been directed to any treaty which might affect the matter in any way, and what we say is upon the assumption that no such treaty exists.

Appellants contend that the property subject to the trust deed, was not within the jurisdiction of the court, and that the court attempted to exercise jurisdiction over the res. It is said that the attempt to administer the property was apparently predicated upon the following provision of section 77B(a), 11 U.S.C.A. § 207(a):

"The court in which such order approving the petition or answer is entered shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section * * *."

It is further said that "wherever located" must be construed as "wherever located within the United States". See Oakey v. Bennett, 52 U.S. 33, 11 How. 33, 13 L.Ed. 593; American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047. Cf. Clark v. Williard, 292 U.S. 112, 121, 54 S.Ct. 615, 619, 78 L.Ed. 1160.

For the purposes of our decision, we will assume that the court below did not have jurisdiction of the property in British Columbia. A portion of § 77B not quoted above provides that the court "shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature". In 11 U.S.C.A. § 207(c) (10) the court is given power to "enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree". The thing in controversy was the propriety of enjoining a judicial proceeding to enforce the lien on property belonging to the debtor, a subject matter, of which the court had jurisdiction under the statute. See Continental Illinois Nat. Bank v. Rock Island Ry., 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110. Appellants submitted their persons to the jurisdiction of the court. We think, therefore, that the court had power to issue the injunction notwithstanding the fact that the res was without its jurisdiction. Phelps v. McDonald, 99 U.S. 298, 299, 25 L.Ed. 473; Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538; Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A.,N.S., 924, 17 Ann.Cas. 853; Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L. Ed. 570; Bradford Elec. Co. v. Clapper, 286 U.S. 145, 159, 52 S.Ct. 571, 575, 76 L. Ed. 1026, 82 A.L.R. 696; Steelman v. All Continent Co., 301 U.S. 278, 290, 291, 57 S. Ct. 705, 710, 81 L.Ed. 1085; Lewis & Spelling, The Law of Injunctions 19, § 12.

Had appellants not submitted their persons to the jurisdiction of the court the question as to whether the court had jurisdiction over the property in question, and could have enjoined persons outside its jurisdiction under United States v. Tacoma Oriental S. S. Co., 9 Cir., 86 F.2d 363, would have then been pertinent. Such is not the case here.

Appellants further contend that the petition was not filed in good faith. Regarding the "good faith" provision, we said in Provident Mut. Life Ins. Co. v. University Ev. L. Church, 9 Cir., 90 F.2d 992, 995: "Good faith is more than bona fide

intentions. The petition in order to satisfy this requirement must show some possibility of successful reorganization." It seems quite clear here that the petition does show such a possibility. It discloses a substantial equity in the property, over and above the claims of creditors. The evidence sustains it. We think the contention should not be sustained.

Appellants further contend that the injunction was improvidently issued. While it is true that the act does not imply "that the commencement or the carrying on of suits against the debtor must be enjoined" (Foust v. Munson S. S. Lines, 299 U.S. 77, 83, 57 S.Ct. 90, 93, 81 L.Ed. 49), the court may do so, as provided in the act, and the "granting or withholding of injunction is left to the discretion of the court". Id. Regarding similar provisions, applicable to railroads, it was said in Continental Illinois Nat. Bank v. Rock Island Ry., supra, page 676, 55 S.Ct. page 606:

"* * * It is a special proceeding which seeks only to bring about a reorganization, if a satisfactory plan to that end can be devised. And to prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile."

Here practically all the assets of the company are covered by the trust deed. The exact value of the assets not so covered was not determined below. Such value may have been as small as $58,950.49, or may have been as large as $241,526.26. If the property covered by the lien is sold there is no business left to reorganize, because the company's business is logging timber, and all its timber is covered by the lien. The fact that the security may decline in value is a fact to be considered when exercising discretion, but it alone does not prevent issuance of the injunction. Continental Bank v. Rock Island Ry., supra, 677. We think the trial court did not abuse its discretion.

Finally, appellants contend that the amount of the injunction bond was inadequate. The company contends that 28 U.S.C.A. § 382, relied on by appellants, does not apply to an injunction issued to protect the jurisdiction of the court. See Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 F. 20, 29; Guaranty Trust Co. v. Broadway & Seventh Ave. R. Co., D.C. N.Y., 43 F.2d 130, 134. The statute mentioned provides that "no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper * * *." Assuming without deciding that such statute is here applicable, it is apparent that the amount of the bond is left largely to the discretion of the court. The statute provides that the bond is to be "conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined" and in exercising its discretion the court should consider such "costs and damages".

The only reason urged that the bond is inadequate is that there is due from the company, interest and sinking fund payments in the sum of $231,394.85. But we do not think such a bond should be required for the purpose of paying debts. It is to be required to indemnify the parties enjoined from "costs and damages" of which there is no showing in this cause. Under such circumstances we are unable to say that the trial court abused its discretion.

Affirmed.

GARRECHT, Circuit Judge (dissenting).

Fully realizing that in matters of this kind much discretion is reposed in the District Court, nevertheless, I am constrained to dissent from the decision rendered for the reason that the proceedings are wanting in good faith in that it appears that they were instituted for purposes of delay and without sufficient assurance that any reorganization can be effected.

"In a reorganization proceeding under section 77B good faith means more than honesty of purpose. It also requires that there be a reasonable possibility of successful reorganization." First Nat. Bank v. Conway Road Estates Co., 8 Cir., 94 F.2d 736, 739. To the same effect Tennessee Pub. Co. v. American Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13. Provident Mut. Life Ins. Co. v. University Ev. L. Church, 9 Cir., 90 F.2d 992, 995.