RANDOLPH et al. v. MISSOURI–KANSAS–
TEXAS R. CO. et al.

No. 4211.

District Court, W. D. Missouri, W. D.

Oct. 28, 1946.

Supplemental Opinion Nov. 22, 1946.

Clif Langsdale and Clyde Taylor, both of Kansas City, Mo., for plaintiff.

Cooper, Neel, Sutherland & Rogers, of Kansas City, Mo., G. H. Penland and M. E. Clinton, both of Dallas, Tex., and C. S. Burg and Carl S. Hoffman, both of St. Louis, Mo., for defendants Missouri-Kansas-Texas R. Co. and Missouri-Kansas-Texas Railroad Co. of Texas.

Tucker, Murphy & Wilson, of Kansas City, Mo., for defendant Brotherhood of Railroad Trainmen.

REEVES, District Judge.

Whatever the designation of the motions or other pleadings filed by the defendants in the above entitled cause, the pervading thought is that the court is without jurisdiction. It is the opinion of able counsel that the questions involved are subject to determination under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and by various administrative tribunals created thereby.

A proper approach to the solution of the question requires a statement of essential parts of the pleadings and the relief sought. Reference may be also properly made to the original answers and supplemental answers filed by the corporate defendants.

Unless the case belongs to the tribunals created by the Railway Labor Act, then this court would have jurisdiction in so far as the diversity of citizenship and amount in controversy are concerned. The complaint details a complete diversity of citizenship and states an amount in controversy clearly within the jurisdiction of the court. No part of the complaint will yield a reasonable deduction of a lack of diversity of citizenship or an inadequate amount in controversy. Furthermore, the averments of the complaint appropriately contain all the indicia of a class action so that it may be, in the consideration thereof, treated as such.

The plaintiffs are officers and members of a labor organization known as the "Brotherhood of Sleeping Car Porters, Train, Chair Car, Coach Porters and Attendants," as well as a local union of said brotherhood. The local union is composed of porters, who are members of the general organization employed by the two corporate defendants.

It is averred by the plaintiffs that by a long established and continued custom, as well as by mutual contract, they have acquired specified valuable rights and privileges, and that same have been and are now recognized by the corporate defendants as valuable and subsisting rights and privileges and that their functions and duties as train porters are not confined to the loading and unloading of passengers, assisting with their luggage, and attending to

their comfort, but, that, in addition thereto, they perform by custom and contract certain duties appertaining to the actual movement of trains and for which duties the plaintiffs have for a long time been compensated and are entitled to such compensation by written contract as well as by said custom and usage.

A written contract to the above effect was actually made and entered into between the plaintiffs and corporate defendants on December 3, 1928. With certain modifications and constructions, not material here, it is averred that said contract is still in force.

It is further charged by the plaintiffs that, notwithstanding such contract and agreement, the corporate defendants have threatened and are now threatening to breach and abrogate said contract· and claim that they are forced to do so by the fraud, duress, threats and undue influence made and threatened to be continued by the defendants Railroad Trainmen, who have demanded and are now demanding that the rights and privileges and remuneration vouchsafed to the plaintiffs by said contract and long continued custom be taken away from the plaintiffs and that the said plaintiffs be deprived of the benefits of said custom and agreement.

The corporate defendants, by their several answers, in effect admit the long-standing custom, agreement and written contract between them and the plaintiffs and the benefits accruing to plaintiffs by reason thereof. They further admit that a deprivation of the rights heretofore enjoyed by the plaintiffs would mean the reduction in wages paid plaintiffs and a restriction in the number of employees belonging to plaintiffs' class. Moreover, the said corporate defendants further say that it is and has been their desire to maintain the status quo and to observe and carry out their obligations under the contract and agreement with the plaintiffs but that they are menaced by their co-defendants who demand the withholding and the taking away of certain duties and functions heretofore performed by and belonging to the plaintiffs, and that same be assigned to and become a part of the duties of the individual defendants and for which they,

and not the plaintiffs, would receive remuneration. It is further alleged by the corporate defendants that such demands by their co-defendants are and were so compelling as to force them to seek the modification of the long continued custom and contract with the plaintiffs. In their several answers the corporate defendants endeavor to bring themselves within the provisions of the Railway Labor Act, and it is for that reason, believing, as they apparently do, that the Railway Labor Act applies, that they aver that this court is without jurisdiction to hear and decide the controversy.

Other facts, if they become pertinent, will be stated in the course of this memorandum opinion.

1. By their complaint the plaintiffs seek, by the injunctive process, to restrain the corporate defendants from canceling or modifying their contract with plaintiffs and to restrain the individual defendants from continuing to coerce, or induce the corporate defendants to breach or abrogate their contract.

There is no dispute about the facts, as all of the parties, both in arguments and in their briefs, in effect, say that the averments of the complaint are true and that the corporate defendants are not only seeking to breach or abrogate their contract with the plaintiffs but that they are being forced to do so by the menacing threats of their co-defendants.

As indicated, all of the defendants endeavor to invoke the provisions of the Railway Labor Act as outlining a proper procedure in cases of this character, and, that, being an administrative remedy, the plaintiffs should and are required to resort to the tribunals created by the Act, and until that has been done this court has no jurisdiction.

■ This position is untenable. The Railway Labor Act did not limit the jurisdiction of the federal court, but, on the contrary, increased that jurisdiction. Paragraph (p) of Section 153, Title 45 U.S. C.A. provides:

"If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the

petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief * * * Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, etc."

Other exceptions need not be mentioned.

It was clearly pointed out in the case of Nord v. Griffin, 86 F.2d 481, 483, by the Seventh Circuit, that:

"The right to earn a livelihood and to continue in employment unmolested by efforts to enforce void enactments or adjudications is entitled to protection, in the absence of an adequate remedy at law."

The court further said, 86 F.2d loc. cit. 483:

"Nor do we believe that the Railroad Labor Act in any way limited the jurisdiction of the District Court as previously conferred by 28 U.S.C.A., § 41(1)."

This case was followed and approved by three judges sitting on a constitutional question in the Eastern Division of the Northern District of Illinois, on October 17, 1946, in the case of Obie Faust Hunter et al. v. Atchison, Topeka & Santa Fe Railway Company et al. (No. 44 C 971). Pertinently the judges said with respect to the Railway Labor Act:

"But it did not take away the right of an employee to appeal to the courts for relief. If a railroad, in violation of the rights of an employee, discharges him or attempts to deprive him of seniority rights the civil courts afford him a remedy. Nord v. Griffin, 7 Cir., 86 F.2d 481, certiorari denied 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879, Moore v. Illinois Central R. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089."

This viewpoint was upheld and emphatically maintained in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood of Locomotive Firemen & Enginemen et al., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187.

Obviously, the Railway Labor Act does not undertake to adjudicate or adjust differences or controversies such as are present in this case. The boards created by the Railway Labor Act are administrative boards with quasi judicial power.

In the instant case the plaintiffs are standing on a contract admittedly entered into between them and the corporate defendants and admittedly conferring upon them certain highly remunerative privileges, and, with equal frankness, it is admitted that the Railroad Companies are seeking to breach or abrogate that contract and that they are doing so under the compulsion, duress and coercion of the individual defendants. It nowhere appears from an examination of the Railway Labor Act that the administrative boards therein created are clothed with authority to direct either the breaching or abrogation of contracts or to exercise a power to deprive one group of employees of valuable rights and confer such rights and benefits upon another group of employees.

■ 2. It is a familiar rule that injunctive relief will be granted, not only to prevent a contracting party from breaching his contract, but, in like manner, " * * * To restrain third persons singly or in combination from unlawfully inducing the breach of a lawful contract by one of the parties thereto when it will result in irreparable injury to the other, * * *." 43 C.J.S., Injunctions, § 89, p. 597; Fairbanks, Morse & Co. v. Texas Electric Service Co., 5 Cir., 63 F.2d 702; Oklahoma Natural Gas Corporation v. Municpal Gas Co., 10 Cir., 38 F.2d 444.

In this case the corporate defendants not only acknowledged the validity of the contract with the plaintiffs but expressed a desire to conform to its provisions. They say they are only moving for a modification because compelled to do so by the menacing threats of their co-defendants.

3. The corporate defendants earnestly pray for an increase in the amount of the injunction bond for the reason that they are now suffering losses and are threatened

with further damage by their co-defendants.

It is provided by Section 382, Title 28 U.S.C.A. that restraining orders or interlocutory injunctions shall be supported in every case by security proffered by the applicants or plaintiffs "In such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby."

In this case, upon the pleadings, upon the arguments of counsel, and upon all of the assumed facts, the plaintiffs are clearly and unquestionably entitled to a temporary restraining order and temporary injunction. A valid and subsisting contract held by them is admittedly threatened and it is not denied but that they would suffer irreparable damage.

In view of the admitted facts, the plaintiffs are not wrongfully enjoining the corporate defendants and the individual defendants. At this early stage of the proceeding, and upon the admitted facts, the plaintiffs have the undeniable right to restrain the abrogation or breach of their contract and to restrain the individual defendants from an endeavor to induce its abrogation or breach. Under such circumstances the plaintiffs ought not to be required to pledge additional security for damages that might and doubtless will accrue to the corporate defendants, but for which the plaintiffs would in no wise be responsible or at fault.

In view of the above, the several motions to dismiss and dissolve the restraining order at this stage of the proceeding will be denied. Furthermore, the motion to increase the injunctive bond will be overruled.

Counsel for the plaintiffs will prepare and submit appropriate entries, orders or decrees.

### Supplemental Opinion.

Since filing the original memorandum opinion in the above case on October 28, 1946, the several defendants have filed sundry motions. Some of these appertain to the correctness of said memorandum opinion and the reasoning thereof. The corporate defendants particularly complain of the language of the opinion in respect of their attitude toward the litigation. They deny that they have challenged the jurisdiction of the court, or deny that they have in any way invoked the Railway Labor Adjustment Act.

1. Reference to the original combined answer of the two defendants (and page 2 thereof), under the heading "I–A," shows the following:

"The complaint herein fails to state a claim upon which relief can be granted against these defendants."

Since the complaint set forth the necessary diversity of citizenship and an amount in controversy within the jurisdiction of the court, and as it was based upon a contract which it was alleged the corporate defendants were seeking to cancel and breach, and that they were doing so at the instance of the individual defendants, no other conclusion could be reached than that it was in the mind of the pleader that the court was without jurisdiction, as clearly the complaint did state a cause of action. Moreover, by an amendment to the joint original answer of defendants Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas, filed on August 26, 1946, and in the first paragraph thereof, the corporate defendants set forth in haec verba correspondence had with the Brotherhood of Sleeping Car Porters wherein said organization was requested to:

"(a) * * * 'please consider this as formal notice required under the Railway Labor Act, of the Railroad's intention to have the performance of such work by train porters discontinued, and of the Railroad's intention to cancel, effective May 16, 1946, the existing agreement between your Organization and the Carrier as to rates of pay and working rules for the classification of train porter, which includes performance of work usually referred to as trainmen's work; and to negotiate a new agreement;' * * *."

The answer teems with suggestions and quotations from letters, all written upon the theory that the entire matter was cogniza-

ble before the Railway Labor Adjustment Board under the Railway Labor Act and not through an adjudication in this court.

It is true that, in the prayer, the corporate defendants acknowledge the real nature of the proceeding and join the plaintiffs in a prayer for a "judgment herein declaring the respective rights and obligations of the parties; that the Court adjudge that said defendants may lawfully cancel said agreement with their train porters or, in the alternative, that said defendants be protected in said judgment against the claims of all other parties; * * *."

As this is a plain suit to enjoin the abrogation of a contract clearly admitted as being in force by the corporate defendants, its cancellation could not be lawfully accomplished in a court of equity or law upon the admitted facts, then such cancellation could only be effected through the administrative proceeding set up in the Railway Labor Act.

It is judicially noticed that the very nature of the proceeding and the parties involved would ordinarily make it seem to invoke the Railway Labor Act. In drawing the answers (both the original and supplemental) able counsel apparently experienced difficulty in separating the two jurisdictions, and particularly is this true in the light of the insistence of the individual defendants and the several Brotherhoods involved. Either the case falls under the Railway Labor Act, or it is as indicated a familiar common law action.

It is suggested that the corporate defendants have not admitted in their answers a contract with the plaintiffs of the kind asserted by plaintiffs. Note the following averments in the original answer (sub-paragraph (c) of Section VIII) at the bottom of page 4:

"Defendants admit that both its brakemen and its train porters heretofore have performed and are now performing work such as inspecting cars and passenger trains, testing signal and brake apparatus, using hand and lamp signals for the protection and movement of passenger trains, flagging, opening and closing switches for the movement of passenger trains, cou-

pling and uncoupling cars and engines, and switching passenger cars; * * *."

And, in subparagraph (a) of Section XVI, at the bottom of page 6, the following:

"(a) Defendants admit that they made a written agreement with their train porters, dated December 3, 1928, covering the wages, working conditions, rules and regulations applicable to said train porters;

"(b) Defendants admit that said agreement has been amended and construed, and presently is in full force and effect because of the temporary restraining order issued in this cause;

"(c) Defendants admit that both trainmen and train porters have performed and are now performing the work specified in Paragraph (B) of Section IV of said complaint; that said work by the train porters has been satisfactory; and that defendants would continue having said work performed both by trainmen and train porters except for the contentions and acts of the Brotherhood of Railroad Trainmen specified in paragraph (c) of Section VIII of this answer and several Awards of the First Division of the National Railroad Adjustment Board which indicate that Board might sustain the claims being filed by the Brotherhood of Railroad Trainmen."

There are many other averments of the answer and the supplemental answer wherein the corporate defendants frankly admit the purpose to cancel the contract with the plaintiffs and evince an intention to make such cancellation effective on June 30, 1946. It should be repeated that it appears to be the pervading thought of all the parties that the questions involved were cognizable under the Railway Labor Act and that proper adjustments could be made by the administrative tribunals therein created.

It may be repeated that either this court has jurisdiction or the administrative tribunals have jurisdiction. The two cannot operate conjointly in adjudicating and adjusting the difficulties here presented. No reason appears, therefore, why the original memorandum opinion should be modified.

2. The corporate defendants renew their motion for an increase of the bond filed by the plaintiffs. It is provided, as pointed out in the original opinion, that the matter of bond in the case of injunctive relief is provided for by Title 28 U.S.C.A. § 382. By that statute it devolves upon the applicant for the restraining order or injunctive relief to give security *"In such sum as the court or judge may deem proper,* conditioned upon the payment of *such costs and damages* as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby." This identical requirement is repeated in Rule 65 of the Federal Rules of Civil Procedure, and in paragraph (c) thereof, 28 U.S.C.A. following section 723c.

■ Quite clearly an applicant for an injunctive order is required to give bond. But the amount of the bond is within the sound discretion of the court. The bond in each case is conditioned "To pay only such costs and damages as the defendants sustained by reason of the wrongful issuance of the restraining order or temporary injunction." International Ladies' Garment Workers' Union et al. v. Donnelly Garment Co. et al., 8 Cir., 147 F.2d 246, loc. cit. 253.

■ In the case of Detroit Trust Co. v. Campbell River Timber Co., 9 Cir., 98 F.2d 389, loc. cit. 393, the court said with respect to the security in an injunctive proceeding:

"Assuming without deciding that such statute (Section 382, supra) is here applicable, *it is apparent that the amount of the bond is left largely to the discretion of the court. * * * But we do not think such a bond should be required for the purpose of paying debts.* It is to be required to indemnify the parties enjoined from 'costs and damages' * * *."

In view of the foregoing authorities it is proper to make reference to the averments of the answer to find out what damages are accruing or have accrued against the corporate defendants by reason of this proceeding. By subparagraph (b) of Section XXI, p. 8 of the original answer, this averment appears:

"Defendants admit that the Brotherhood of Railroad Trainmen both orally and in writing, including a letter *dated April 1, 1946, has made known to defendants its position as set forth in preceding paragraph (a); * * *."*

Preceding paragraph (a) refers to the claims of the defendant Brotherhood of Railroad Trainmen and the insistence of that group that the services "should be performed only by brakemen and that defendants violate their agreement with the Brotherhood of Railroad Trainmen each time any part of such work is performed by anyone other than a brakeman; that the Brotherhood of Railroad Trainmen has threatened to file a claim against defendants for each available brakeman first out on the extra board every time a train is run on which such work is performed by anyone except a brakeman; and that many such claims have been filed, aggregating thousands of dollars;"

By paragraph (g) of Section XXVI of the original answer, on page 12 thereof, the corporate defendants say:

"In said letter of April 1, 1946, the Brotherhood of Railroad Trainmen threatened to file a claim against defendants for each available brakeman first out on the extra board every time a train is run on which such work is performed by anyone except a brakeman. Since April 10, 1946, six hundred eighty-eight (688) claims, totaling Six Thousand Four Hundred Forty-seven and 96/100 Dollars ($6,447.96), have been filed with said defendants who are informed that the filing of many other claims, aggregating thousands of dollars, has been temporarily deferred;"

■ The original petition was filed on June 24, 1946. The complaint alleged, and it is admitted, that the corporate defendants were threatening to cancel the contract with the plaintiffs as of date June 30, 1946. The claims complained about were then accumulating and would have continued to accumulate. Certainly the contract could not have been cancelled on the date mentioned without resistance on the part of the plaintiffs. That means the claims mentioned by the corporate defendants would have been accumulating and would have continued to accumulate with-

out regard to this proceeding. It cannot be said that the damages already largely accrued before any suit was filed can now be attributed to this suit. They are neither consequential damages, incidental damages, nor remote damages. This suit has nothing to do with the damages mentioned by the corporate defendants, unless of course they may have been permitted arbitrarily to cancel and violate a subsisting agreement between them and the plaintiffs. The statute and the rule providing the security in injunctive proceedings did not contemplate damages of the character involved or discussed in this proceeding.

In view of the above, it does not appear that the defendants are entitled to the security they claim on the injunctive bond, and therefore the present bond is sufficient for all of the purposes herein.

3. The individual defendants, through counsel, have withdrawn their motion to dismiss and have filed in lieu thereof a motion to stay the proceedings wherein they again challenge the jurisdiction of the court and seek to have the matter adjudged by the tribunals created under the Railway Labor Act. This raises the identical questions heretofore discussed and ruled. Either the Railroad Adjustment Board, or some division thereof, has jurisdiction of the subject matter, or this court has jurisdiction. It is my opinion that the court has jurisdiction of this action for the reason that it does not approach or trench upon any valid functions of the administrative tribunals. It is a common law action to restrain the threatened breach of an acknowledged contract and to restrain some of the defendants from coercing the corporate defendants into committing such breach. It has nothing to do with labor conditions, working conditions, wages, or any other matter cognizable before the Adjustment Board. It must be reiterated that the court has jurisdiction and that the motions interposed by the defendants are without merit and should be overruled.

Counsel for the plaintiffs have heretofore proffered an order or decree conformable to the views expressed in the first memorandum. The proposed decree was responsive to the views therein expressed. It may be, in view of the changed pleadings, that it would be appropriate for counsel to propose another decree in lieu of that one. In that view, the advice of the parties will be awaited.